Although *Cornetta* involved a claim of unlawful discharge from the United States Marine Corps, we find its reasoning persuasive. Here, the State has not shown that it has been prejudiced by expending any money that it would not have otherwise spent or taken any action that it otherwise would not have taken had the Employees brought their suit earlier. *Cf. SMDfund*, 831 N.E.2d at 731 (concluding that airport authority had established prejudice caused by delay where it issued bonds, incurred debt exceeding $44,000,000, and entered into leases and contracts, some of which extend for sixty-eight years into the future).

Nevertheless, in its reply brief, the State for the first time baldly asserts that "[n]ot only has the State suffered economic prejudice by plaintiffs' delay in the instant action, it has incurred defense prejudice as evidenced by sketchy records, records without adequate foundation and confused witnesses testifying about things that happened as much as 37 years ago." Appellants' Reply Br. at 22. We observe that we have determined that Exhibit C was sufficiently trustworthy to be admitted as evidence and that it was properly identified and authenticated. In any event, the State fails to expand on this assertion and fails to provide citations to the record. Therefore, it has waived this argument. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind.Ct.App.2002) (holding that appellants waived issue by not presenting a cognizable argument in support thereof), *trans. denied; see also* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on. . . .").

Because all three elements must exist to prove laches and the State failed to carry its burden as to the third element, we need not address the remaining two elements. We conclude that laches does not bar the Employees' claims.

### Conclusion

We reverse the trial court's finding that the merit Employees, represented by Veregge and Strong, are entitled to twenty years of back pay and remand with instructions to recalculate the merit Employees' back pay based on the time period beginning ten days before the July 29, 1993, complaint was filed and ending when the State abolished the split class system. On remand, we instruct the trial court to determine whether the State abolished the split class system on September 12 or September 19, 1993. We affirm the trial court's judgment in all other respects.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and BARNES, J., concur.

R.R.F., Appellant–Petitioner,

v.

L.L.F., Appellee–Respondent.

No. 69A01–1001–DR–77.

Court of Appeals of Indiana.

Oct. 8, 2010.

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

R.R.F. ("Father") appeals the dissolution court's order on L.L.F.'s ("Mother's") petition for modification of child support. Father presents three issues for our review:

1. Whether the dissolution court erred when it ordered Father to pay child support retroactive to May 11, 2009.

2. Whether the dissolution court abused its discretion when it did not award Father a setoff in light of the tax credit Mother will receive as a result of their child's enrollment in college.

3. Whether the dissolution court erred when it denied Father credit for nonconforming child support payments.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

Father and Mother were married and have two children, A.F., born in May 1987, and E.F., born in May 1991. The parties' marriage was dissolved by decree in 2001. The parties' settlement agreement provided that Mother would have primary physical custody of the children and Father would have visitation and pay child support. In 2005, the parties entered into an agreed order whereby Father's weekly child support obligation was decreased and Father and Mother agreed on their respective contributions to A.F.'s college expenses. In 2006, the parties entered into another agreed order, which provided that Father would pay the entire parental contribution to A.F.'s college expenses and E.F.'s private school tuition. In addition, the agreed order modified Father's weekly support obligation.

On April 14, 2008, the parties entered into an agreed entry, which provided in relevant part as follows:

1. That child support for [E.F.] from March 14, 2008, through May 11, 2009 [his eighteenth birthday], shall be Two Thousand Seven Hundred Fifty Dollars ($2,750.00), which shall be paid by [Father] to [Mother] upon execution of this agreement. Both parties agree that there may be responsibility for child support beyond May 11, 2009, and the parties shall either enter into a new agreement to address [E.F.]'s child support and college education expenses or that matter shall be determined by the Court at the request of either party.

* * *

5. Both parties agree that all sums of money heretofore ordered have been paid in full as to both parties, with the exception of the Two Thousand Seven Hundred Fifty Dollars ($2,750.00) payment outlined above.

6. The parties further stipulate and agree that upon the payment of the Two Thousand Seven Hundred Fifty Dollars ($2,750.00) there is no arrearage due as of the date of the signing of this agreement, and the Two Thousand Seven Hundred Fifty Dollar ($2,750.00) payment shall make [Father] current through May 11, 2009.

Appellant's App. at 122–23. After E.F. turned eighteen on May 11, 2009, Father stopped making child support payments because he and Mother had not entered into a new agreement and neither party had requested the trial court to determine child support from that date.

On September 9, 2009, after E.F. decided to attend Indiana State University, Mother filed a verified petition for modification of child support. In that petition, Mother alleged a substantial change in circumstances in that "[t]he parties' oldest child, [A.F.], is over the age of 21 and is emancipated by operation of law. The parties' remaining son, [E.F.] has enrolled full-time in college. Support should be modified to reflect the emancipation of [A.F.], post-secondary educational expenses adjudicated for [E.F.], and child support modified accordingly." *Id.* at 125. And Mother requested a hearing "to determine if child support should be changed, to establish education expense obligation for [E.F.], to establish child support for the period after 5/11/09, and to adjudicate an arrearage." *Id.*

Following a hearing on Mother's petition on November 18, the dissolution court granted the petition and found in relevant part:

6. The Court finds that [Mother] is employed earning $1,359.33 per week and [Father] is employed earning $2,423.60 per week. . . .

7. The parties further agree that yearly college expenses for [E.F.] are as follows: Tuition—$7,226.00, Room & Board—$7,463.00, Books—$1,170.00, Fees—$200.00. The parties dispute miscellaneous expenses with [Mother] testifying that she believes them to be $430.00 and [Father] believing them to be $945.00. The difference between the figures is [Father's] inclusion of cell phone and car insurance expenses for [E.F.] The Court finds inclusion of the cell phone and car insurance costs as miscellaneous expenses to be in the best interests of the child and will use the $945.00 figure. [E.F.] received a $3,500.00 subsidized loan and a $2,000.00 unsubsidized loan in financial aid which shall be attributed to his contribution toward his college expenses. The parties further agree that [Mother] shall continue to claim [E.F.] as a dependent for income tax purposes to maximize his financial aid award.

\* \* \*

10. *Child Support and Educational Expenses.*

a. The Court rejects [Father's] contention that child support should only begin as of September 9, 2009, the date of filing the Petition to Modify. [Father] relies on I.C. 31–16–16–6, *Becker v. Becker,* 902 N.E.2d 818 (Ind.2009)[,] and like cases in support of his contention. While it is true that a modification of a support obligation may relate back, at the earliest, to the date a petition to modify was filed, this only pertains to the Court's ability to retroactively modify an obligor's duty to pay a delinquent child support obligation. Ind.Code § 31–16–16–6 (Burns Code Ed. Repl. 1997); *Beehler [v. Beehler],* 693 N.E.2d [638] at 640. "[O]nce funds have accrued to a child's benefit under a court order, the court may not annul them in a subsequent proceeding." *Nill v. Martin,* 686 N.E.2d 116, 117 (Ind.1997).

As the [parties'] last child support order dated April 14, 2008, did not establish a child support obligation on behalf of [Father] beyond May 11, 2009, his support was neither delinquent nor had accrued at the time the petition to modify was filed. Therefore, the authority cited by [Father] does not apply and the petition to modify the April 14, 2008

[order], is treated as an order to establish support.

Further, it is clear from the language of the April 14, 2008, agreed order that the parties contemplated and agreed to revisit the issue of the child support obligation accruing as of May 11, 2009, thereby preserving the issue for this Court. As parents have a common law duty to support their children and this duty exists apart from any court order or statute, the Court finds it necessary to establish support for [E.F.] *Matter of S.T.,* 621 N.E.2d 371, 373 (Ind.Ct.App. 1993).

\*   \*   \*

c. *Child Support from May 11, 2009 to August 22, 2009.* [Father] is further ordered to pay $197.45 per week beginning May 11, 2009[,] through August 22, 2009[,] through the Clerk of the Court or the Indiana State Central Collection Unit. The total owed for this period is $2,961.75 . . .

d. *College Expenses.* Pursuant to the Child Support Obligation Worksheet with Post–Secondary Education Expenses, attached hereto as Exhibit B and incorporated by reference, [Father] shall pay 64.07% of post-secondary education expenses for [E.F.] up to $7,370.61. [Mother] shall pay 35.93% of post-secondary education expenses for [E.F.] up to $4,133.39. This order shall continue while [E.F.] is enrolled as a full-time student in college pursuing a Bachelor's degree or until further order of this court. The Court acknowledges that the yearly caps for each parent's contribution may be adjusted as college expenses arise and/or [E.F.]'s financial aid changes and shall be adjusted in the same manner as calculated in this order.

\*   \*   \*

g. *Set-offs requested by [Father].* [Father] submitted Petitioner's Exhibits 3, 11 and 12 documenting credits he wished to obtain for non-conforming child support contributions. Non-conforming payments made by the non-custodial parent for the benefit of the children are considered gratuitous or voluntary contributions and should not be considered a prepayment of the support obligation or credited against arrearages due. *Olson v. Olson,* [445 N.E.2d 1386, 1389 (Ind.Ct.App.1983)]. Credit is allowed in three narrow situations:

(1) when the proof offered is sufficient to convince the trier of fact that the judicially required support payments have actually been made by the obligated party to the person entitled even though the payments are technically nonconforming; (2) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, and (3) where the obligated parent by agreement with the custodial parent has taken the children into his or her home, assumed custody of them, provided them with necessities, and has exercised parental control over their activities for such an extended period of time that a permanent change of custody has in effect occurred.

[*In re*] *Baker,* 550 N.E.2d [82] at 87. . . .

The Court cannot find that all of the exceptions set forth in *Baker* exist in this matter. [Father] shall receive no set-off for non-conforming payments.

\*   \*   \*

12. *Tax Deductions.* The parties agree and the Court hereby orders that it is in [E.F.]'s best interest for [Mother] to continue to claim him as a dependent

for income tax purposes to maximize [E.F.]'s financial aid awards.

The Court rejects [Father]'s request for [Mother] to reimburse him for income based tax credits she is entitled [to] for college payments for which he is not entitled by federal law. This Court is without jurisdiction to usurp federal tax law which allows said credits. [Father]'s reliance on the comments to the child support guidelines pertaining to college tax credits is misplaced as that provision merely states that courts may consider who may be entitled to claim various educational expenses when *assigning financial responsibility* so that one party does not disproportionately benefit. In other words, if both parties qualify for the federal tax credit or certain tax credits, the Court should allocate the expenses equitably so that qualifying parties are not unnecessarily deprived of a deduction. The comment does not allow the Court to award exemptions or reimbursement for exemption to a party that does not qualify under federal law.

*Id.* at 179–85 (emphasis original). This appeal ensued.[1]

## DISCUSSION AND DECISION

### Issue One: Retroactive Support

■ Father first contends that the dissolution court erred when it ordered him to pay retroactive child support to a date preceding the filing date of Mother's petition to modify. Father maintains that retroactive modification of child support is prohibited under Indiana law. Here, however, the dissolution court did not modify an existing child support order or agreement. Instead, the dissolution court ordered Father to pay child support for a period of time predating Mother's petition when Father owed child support but no order was in place. We hold that the dissolution court did not err.

The parties had entered an agreed order whereby Father would pay child support for E.F. until his eighteenth birthday. The parties agreed that after that date, they would revisit the issue of child support and/or college expenses. E.F. turned eighteen on May 11, 2009, and Father ceased making child support payments under the agreed entry. E.F. decided to attend college and Mother subsequently filed her petition for modification of child support.[2] The dissolution court ordered Father, in relevant part, to pay $2,961.75 in child support for the period May 11, 2009[,] to August 22, 2009.

Indiana Code Section 31–16–6–6 provides in relevant part that a parent's child support obligation "ceases when the child becomes twenty-one" unless certain conditions exist.[3] There is no evidence here that any of the conditions have been met to exempt Father's obligation to E.F. un-

---

1. We remind Father's counsel that the appendix on appeal in a civil case shall include only "those parts of the record on appeal that are necessary for the Court to decide the issues presented." Ind. Appellate Rule 50(A)(1). Here, the majority of the Appellant's Appendix consists of parts of the record that are not necessary or even helpful to our review, including, for example, copies of motions for continuances and petitions for attorney's fees. The appropriate appendix in this case would consist of a fraction of the number of pages included in the appendix filed.

2. While the title of Mother's petition refers to "modification," it is undisputed that there was no existing child support order to be modified. The dissolution court's order established child support for the period of time in dispute.

3. The conditions include a child's emancipation or incapacitation prior to the age of twenty-one.

der the statute. And this court has interpreted the relevant statutes and held that "the duty to support a minor child ceases upon the child's twenty-first birthday unless that child has become emancipated at an earlier date." *Brokaw v. Brokaw*, 398 N.E.2d 1385, 1387 (Ind.Ct.App.1980). There is no evidence in this case that E.F. was emancipated.

In *Brokaw*, the parties agreed that Father's child support obligation would continue until their child reached the age of eighteen, and that provision of the parties' settlement agreement was incorporated in the final decree. Several years later, after the child's eighteenth birthday, Father stopped paying child support. Mother filed a motion to show cause, and the dissolution court ordered Father to resume his child support payments. Father appealed, arguing that the parties' original agreement to cease his child support obligation upon the child's eighteenth birthday had never been modified and was still in force. This court disagreed, citing a former version of Indiana Code Section 31–16–6–6 and a former version of Indiana Code Section 31–16–6–7, which provides in relevant part: "Unless otherwise agreed in writing or expressly provided in the order, provisions for child support are terminated: (1) by the emancipation of the child[.]"

This court reiterated that a contract made in violation of a statute is void. *Brokaw*, 398 N.E.2d at 1388. And we held that if the parties' child "had become emancipated upon his eighteenth birthday, then [Father] might be able to convince us that his termination of support was not contrary to law. However, this is not the case." *Id.* Because the child had not been emancipated and was under the age of twenty-one, we held that the parties' agreement that Father would cease his child support payments after the child turned eighteen was "contrary to law." *Id.* at 1388–89.

Likewise, here, the provision in the parties' agreed entry whereby Father ceased child support payments upon E.F.'s eighteenth birthday was contrary to law and void. The parties agreed that there "may be responsibility" for support beyond that date, but neither party sought to establish such support until Mother filed her petition several months later. Appellant's App. at 122. We hold that the dissolution court properly ordered Father to pay child support from May 11, 2009 until August 22, 2009. Since there was no retroactive modification of support, Father cannot prevail on this issue.

### Issue Two: Tax Credit

█ Father next contends that the dissolution court abused its discretion in apportioning the parties' respective contributions to E.F.'s college expenses. In particular, he maintains that the dissolution court did not properly consider the significant tax credit Mother would receive for her contribution to E.F.'s college expenses before the court assigned each party's responsibility for those expenses. We must agree.

The dissolution court found in relevant part as follows:

10. *Child Support and Educational Expenses.*

\* \* \*

d. *College Expenses.* Pursuant to the Child Support Obligation Worksheet with Post–Secondary Education Expenses, attached hereto as Exhibit B and incorporated by reference, [Father] shall pay 64.07% of post-secondary education expenses for [E.F.] up to $7,370.61. [Mother] shall pay 35.93% of post-secondary education expenses for [E.F.] up to $4,133.39. This order shall continue while [E.F.] is enrolled as a

full-time student in college pursuing a Bachelor's degree or until further order of this court. The Court acknowledges that the yearly caps for each parent's contribution may be adjusted as college expenses arise and/or [E.F.]'s financial aid changes and shall be adjusted in the same manner as calculated in this order.

\* \* \*

12. *Tax Deductions.* The parties agree and the Court hereby orders that it is in [E.F.]'s best interest for [Mother] to continue to claim him as a dependent for income tax purposes to maximize [E.F.]'s financial aid awards.

The Court rejects [Father]'s request for [Mother] to reimburse him for income based tax credits she is entitled for college payments for which he is not entitled by federal law. *This Court is without jurisdiction to usurp federal tax law which allows said credits.* [Father]'s reliance on the comments to the child support guidelines pertaining to college tax credits is misplaced as that provision merely states that courts may consider who may be entitled to claim various educational expenses when *assigning financial responsibility* so that one party does not disproportionately benefit. In other words, if both parties qualify for the federal tax credit or certain tax credits, the Court should allocate the expenses equitably so that qualifying parties are not unnecessarily deprived of a deduction. The comment does not allow the Court to award exemptions or reimbursement for exemption to a party that does not qualify under federal law.

Appellant's App. at 180–85 (some emphasis original, some emphasis added).

On appeal, Father maintains that he was not asking the dissolution court to "usurp federal tax law[.]" Instead, at the hearing on Mother's petition, Father asked the court to consider Indiana Child Support Guideline 8(b), which provides in relevant part:

> Current provisions of the Internal Revenue Code provide *tax credits and preferences which will subsidize the cost of a child's post-secondary education.* While tax planning on the part of all parties will be needed to maximize the value of these subsidies, *no one party should disproportionately benefit from the tax treatment of post-secondary expenses. Courts may consider who may be entitled to claim various education tax benefits and tax exemptions for the minor child(ren) and the total value of the tax subsidies prior to assigning the financial responsibility of post-secondary expenses to the parents and the child.*

(Emphases added). Father asked that the dissolution court assign financial responsibility to each party such that Mother would not disproportionately benefit from the tax credit. Father asked that he be given a setoff in proportion to the amount of Mother's tax credit.

In *Borum v. Owens,* 852 N.E.2d 966, 969 (Ind.Ct.App.2006), we set out the applicable standard of review:

> Generally:
>
> > Educational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. The trial court's decision concerning financial contributions to college endeavors will be affirmed unless the decision is clearly against the logic and effect of the facts and circumstances which were before it. Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order

a parent to pay part or all of such costs when appropriate.

*Gilbert v. Gilbert,* 777 N.E.2d 785, 792–93 (Ind.Ct.App.2002) (citations omitted). When ordering the payment of education expenses, the trial court considers whether and to what extent the parents, if still married, would have contributed to the child's college expenses. *"If the trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes."* (Citation omitted, emphasis added).

Here, the dissolution court determined, and the parties do not dispute, that their respective shares of E.F.'s college expenses, which correspond to their respective incomes, are as follows: Father shall pay 64%, and Mother shall pay 36%. The parties agree that their portion of E.F.'s college expenses totals $11,500, so Father is responsible for $7370 and Mother is responsible for $4133. Father presented evidence that Mother is entitled to a $4000 tax credit for her contributions toward E.F.'s college expenses. Because the dissolution court did not give Father a setoff commensurate with Mother's tax credit, Mother's effective contribution is approximately $140, or approximately 1% of the parties' portion of the expenses, while Father's contribution is $7370, or 64%.

■ The dissolution court cannot have intended this result. We believe the dissolution court misinterpreted the language in Guideline 8, which expressly states that the court *"may consider* who may be entitled to claim various education tax benefits ... and the total value of the tax subsidies *prior to assigning the financial responsibility of post-secondary expenses to the parents and the child."* (Emphases added). We read that guideline as authorizing the dissolution court to provide Father a setoff commensurate with Mother's tax credit. We agree with Father that the tax credit to Mother is akin to a source of financial aid, and Indiana Code Section 31–16–6–2(a)(1)(B) provides that an educational support order shall take into account "the ability of each parent to meet [the] expenses" and the ability to procure "sources of financial aid reasonably available to the child and each parent." Indeed, Guideline 8 expressly considers the tax credit a federal subsidy.

Mother does not dispute Father's valuation of her tax credit at $4000. We remand to the dissolution court and instruct the court to first consider the reduction in the parents' obligation toward E.F.'s college expenses realized by Mother's tax credit and then apportion Father's and Mother's obligations accordingly. Should the dissolution court want to maintain the 65–35 split and grant Father a setoff to produce that result, the court would be so authorized under Guideline 8.

### Issue Three: Nonconforming Payments

■ Finally, Father contends that the dissolution court erred when it denied him credit for certain financial assistance he had provided to E.F. during the summer of 2009, when no child support order was in place. The dissolution court found that Father was not entitled to credit for those payments because they were "non-conforming" and, therefore, "gratuitous or voluntary contributions[.]" Appellant's App. at 183–84 (citing *Olson v. Olson,* 445 N.E.2d 1386, 1389 (Ind.Ct.App.1983)) (holding non-conforming child support payments are generally considered gratuitous and should not be considered a prepayment of a support obligation or credited against arrearages, except under three narrow exceptions). On appeal, Father maintains that the payments at issue cannot be considered non-conforming payments, and the rule set out in *Olson* does not apply, since there was no child support order in place when those payments were made.

■ Unrequired payments made by a non-custodial parent for the benefit of children must be considered a gratuity or a voluntary contribution. *Id.* at 1389. They should not be considered a prepayment of the support obligation. *Id.* Nor should they be credited against arrearages due with respect to other children. *Id.*

In *Holy v. Lanning*, 552 N.E.2d 44, 45–46 (Ind.Ct.App.1990), we explained further:

> The rule is that overpayments cannot be applied prospectively to support not due at the time of the overpayment.
>
> > [A]ny excess payment made [has] to be considered a gratuity or at least a voluntary contribution for the support of the children, and not a prepayment of future support obligations. If non-court approved prepayments, such as those [here] were to be permitted, it would be possible for a parent, who is obligated to pay support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.
>
> *Haycraft v. Haycraft*, 176 Ind.App. 211, 375 N.E.2d 252, 255 (1978).

(Footnotes omitted, emphasis added).

Here, we are faced with a unique set of circumstances. Father was legally obligated to provide support for E.F. past his eighteenth birthday, but without a support order in place, there were no "required payments," per se. Father supported E.F. by paying for his car insurance, health insurance, and cell phone, and Father bought E.F. a laptop computer, which E.F. was required to have to attend college at Indiana State University. Those purchases cannot be considered "prepayment" of a support obligation, but were, in effect, payments of an undefined support obligation. Nor was Father seeking to apply those payments to an arrearage, since he was not in arrears at the time of the payments.

Given the policy rationale for denying credit for "non-conforming payments," we cannot say that those considerations apply here. Father was supporting E.F. in much the same way that he would have had the child support order been in place. We agree with Father that the dissolution court should have credited him for those payments against the court's order that he pay $2961.75 for the period May 11 to August 22, 2009. Father's Exhibit 3 shows that Father paid a total of $2596.34 for E.F.'s car insurance, health insurance, cell phone, and laptop.[4] On remand, the dissolution court shall issue an order crediting Father for those payments.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and MATHIAS, J., concur.

---

4. The dissolution court expressly found that Father's expense for a hotel room during E.F.'s orientation at Indiana State University was an expense personal to Father and not for the benefit of E.F., so we exclude that from our calculation. We also note that Father gave E.F. $500 in cash for a savings account. We have included that amount in our calculation of the credit due to Father.