## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 04 2016, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan Bailey
CGS Law Group
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Faulds, <br> *Appellant-Respondent,* <br><br> v. <br><br> Jennifer Faulds, <br> *Appellee-Petitioner.* | August 4, 2016 <br><br> Court of Appeals Case No. <br> 48A02-1511-DR-1889 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable G. George Pancol, Judge <br><br> Trial Court Cause No. <br> 48C02-9903-DR-369 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Robert Faulds (Father), appeals the trial court's Order, calculating Appellee-Petitioner's, Jennifer Faulds (Mother), arrearage of child support.

We reverse and remand for further proceedings.

## ISSUE

Father raises one issue, which we restate as: Whether the trial court abused its discretion when it credited Mother's child support arrearage with nonconforming purchases and other expenditures made for the minor child.

## FACTS AND PROCEDURAL HISTORY

Father and Mother were married on July 18, 1992. During the marriage, one child, T.F., was born on July 16, 1996. Mother filed a petition to dissolve the marriage on March 19, 1999. On November 29, 1999, the trial court entered its order of dissolution, awarding legal and physical custody of the minor child to Mother, with Father receiving reasonable parenting time. Father was ordered to pay child support in the amount of $105 per week.

On October 26, 2011, Father filed a verified petition for emergency custody. By Order of November 4, 2011, the trial court modified custody, granting physical custody of T.F. to Father, with the parties to exercise joint legal custody. On February 3, 2012, the parties filed an Agreed Entry, which was adopted by the trial court, agreeing, in pertinent part, that:

2. The parties agree, given Mother's current financial circumstances, that being the fact that she is currently unemployed, that no support shall be ordered for the remainder of the 2012 calendar year.

3. In the event that Mother becomes employed before December 31, 2012, she shall immediately notify Father of her employment.

4. Mother agrees to produce verification of her income, i.e., W2's, 1099's, etc. to Father on or before January 30, 2013 to determine whether or not child support obligation should be modified at that time.

(Appellant's App. p. 20).

[6] Mother did not submit verification of her income to Father pursuant to the Agreed Entry. On April 19, 2013, Mother filed her notice of intent to relocate to Kentucky, as well as a motion to modify parenting time. On June 26, 2013, Father filed a petition to establish child support retroactive to January 1, 2013. On July 30, 2013, the trial court granted Mother "all reasonable visitation" with T.F. with respect to her relocation. (Appellant's App. p. 32). The trial court did not include a provision to cover the travel expenses related to the visitation. A praecipe for a hearing on child support was filed by Father on October 15, 2013, and again on January 29, 2015. On August 12, 2015, the trial court conducted a hearing on Father's petition to establish child support. During the hearing, Mother testified that

I have all my bank statements for the last since thirteen (13) [sic] to now [] with every documented time of me coming to

Anderson and every bit of money that I spent on [T.F.] which includes food [] it includes clothing underwear garments personal care items shoes school supplies and prom all of her prom attire that she had for two proms [] plus [Father] was supposed to provide [] a intermediate like meet me half way to expedite [] me seeing her and [] he didn't doesn't do that [] so I drive here so I have gas I have wear and tear on my car and I have expenses every time I come back and forth. [] [I]f she comes to stay with me which she has on a number of occasions I go get her and I bring her straight back so I drive round trip six and a half hours to do that. . . . I bought her a tire for her car[.] . . . I have a list of monies that I have spent over the last two and a half years on [T.S.] and it's quite a bit [] because I do give her I provide her clothing and I provide her with school stuff I provided her with all of her prom stuff I spent nearly five to six hundred dollars ($600.00) on her prom things each month . . . I feel like I should be given credit for my parenting time I've had hotel expenses coming to stay here so I could see her overnight[.]

(Transcript pp. 15-16).

[7]    That same day, the trial court issued its findings of fact and conclusions thereon finding, in pertinent part,

The [c]ourt finds that pursuant to the [A]greed [Entry] of 2012, the [c]ourt was to set support upon the Mother obtaining employment, which she did in January of 2013. The [c]ourt finds that based on the Mother's evidence that she was earning $74,000 a year in 2013 and 2014 and still employed as a nurse until June of 2015. The [c]ourt therefore bases the Mother's gross income on $74,000 per year divided by 52 weeks, which equals $1,423.10. The [c]ourt finds that the Father is on disability of approximately $2,000.00 per month divided by 4.3 weeks equals $465.12. The Mother shall pay $179.00 per week. This amount is retroactive to [the] first Friday in January of

2013, continuing through July 18th, 2015 when the parties' daughter reached the age of nineteen and was emancipated for the purposes of current support by law. The [c]ourt shows that is equals 132 weeks at the rate of $179.00 per week, for a total arrearage of $23,628.00.

The [c]ourt does find that due to the fact that there has been no support entered for such a long period of time, that the [c]ourt will give Mother credit for the itemized payments she has made on behalf of the daughter. This leaves a total arrearage payable by the Mother to the Father in the sum of $8,709.25, which will be payable at a rate of $100.00 per week until Mother obtains new employment, at which time she is immediately [to] notify the [c]ourt and the [c]ourt will consider an adjustment as to the weekly amount to be paid.

(Appellant's App. p. 8). Father filed a motion to correct error on October 2, 2015, which was denied by the trial court.

[8] Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9] Father contends that the trial court abused its discretion by crediting Mother's child support arrearage with nonconforming gifts purchased for T.F. The trial court's calculation of child support is presumptively valid. *Ashworth v. Ehrgott*, 982 N.E.2d 366, 372 (Ind. Ct. App. 2013). The trial court's decision regarding child support will be upheld unless it has abused its discretion. *Id*. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and the circumstances before it or if it has misinterpreted the law. *Id*. Our standard of review is also governed by the trial court's decision in this case

to enter findings of fact and conclusions of law. *Id*. In such instances, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." *Id*. Where, as here, it appears that the trial court issued findings and conclusions *sua sponte*, the specific findings control only as to the issues they cover. *Id*. A general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id*.

[10] Initially we note that Mother did not file an appellate brief. A less stringent standard of review is applied with demonstrating reversible error when an appellee fails to file a brief. *McKinney v. McKinney*, 820 N.E.2d 682, 685 (Ind. Ct. App. 2005). In this situation, a judgment may be reversed if the appellant demonstrates a *prima facie* case of error, an error at first sight, on first appearance, or on the face of it. *Id*. With this in mind, we now turn to Father's argument.

[11] One of the purposes of child support is to provide a child with regular and uninterrupted support. *Hicks v. Smith*, 919 N.E.2d 1169, 1171 (Ind. Ct. App. 2010), *trans. denied*. It has long been held that the right to support lies exclusively with the child and a custodial parent holds the child support payments in trust for the child's benefit. *Id*. In general, a parent obligated to pay child support will not be allowed credit for payments that do not conform to the support order. *Decker v. Decker*, 829 N.E.2d 77, 79 (Ind. Ct. App. 2005). Gifts, entertainment, and other similar, incidental expenditures made by the

non-custodial parent should not be credited against child support arrearages. *Payson v. Payson*, 442 N.E.2d 1123, 1129 (Ind. Ct. App. 1982). However, in some circumstances, a credit may be granted to the noncustodial parent in the event of nonconforming support payments. *DeMichieli v. DeMichieli*, 585 N.E.2d 297, 302 (Ind. Ct. App. 1992). More specifically, Indiana courts have recognized narrow exceptions for (1) payments made directly to the custodial parent, (2) payments made via an alternative method agreed to by the parties and substantially complying with the existing decree, (3) payments covered when the non-custodial parent takes custody of the children with the other parent's consent, and (4) payments made toward the funeral expenses of the child. *Decker*, 829 N.E.2d at 80.

[12]  Father relies on *DiMichieli* and its progeny to support his claim that the trial court abused its discretion by crediting Mother's child support arrearage with nonconforming payments as none of the judicially recognized exceptions are present in this case. However, we find the present situation more akin to *R.R.F. v. L.L.F.*, 935 N.E.2d 243, 245 (Ind. Ct. App. 2010), where Father requested a credit of nonconforming payments towards the accrual of his child support obligation. In *R.R.F.,* Father had stopped making the required child support payments because "he and Mother had not entered into a new agreement and neither party had requested the trial court to determine child support from" the date the child turned eighteen. *Id*. at 246. Prior to the entry of a new child support order, Father supported the child "by paying for [the child's] car insurance, health insurance, and cell phone, and Father bought [the child] a

laptop computer" which was required to attend college. *Id*. at 252. When the trial entered a new child support order, Father requested a credit for the financial assistance he had provided to his child when no child support order was in place. *Id*. at 251. Because the trial court categorized Father's assistance as "nonconforming payments," they were considered "gratuitous or voluntary contributions" and could not be credited towards Father's child support arrearage. *Id*. On appeal, this court noted that, although Father was legally obligated to provide support for the child past his eighteenth birthday, without a support order in place there were no required child support payments per se. *Id*. at 252. We found that Father's purchases could not be considered prepayment of a support obligation, "but were, in effect payments of an undefined support obligation. Nor was Father seeking to apply those payments to an arrearage since he was not in arrears at the time of the payments." *Id*. As a result, we agreed with Father that he should receive a credit as he was supporting his child in much the same way that he would have had the child support order been in place. *Id*. While we credited the purchases outlined above, we did determine that Father's expense for a hotel room during the child's college orientation weekend was a personal expense and could not be credited towards the arrearage. *Id*. n.4.

[13] Despite the overall similarities to *R.R.F*, we find some significant distinctions with the current situation. In *R.R.F.*, the purchases amounted to expensive, extra-ordinary and one-time payments, which seemingly had been well documented by Father. Unlike the car or health insurance in *R.R.F.*, here,

Mother asserts that during every parenting time, she expended money to purchase T.F. food, clothes, personal care items, and prom garments. To support this allegation, Mother submitted a handwritten list of expenses and generic bank statements. The bank statements merely establish the date of purchase, the amount, and a description of the purchase. No evidence was provided that these purchases effectively benefitted T.F. Moreover, Mother not only requested a credit for the purchases she made for T.F. but also for the wear and tear on her car and hotel expenses while exercising her parenting time, despite the fact that the trial court never included a provision for travel expenses during earlier proceedings.

[14]   Indiana law imposes a duty upon a parent to support his or her children. *Irvin v. Hood*, 712 N.E.2d 1012, 1014 (Ind. Ct. App. 1999). This duty exists apart from any court order or statute. *Id*. Generally, a court is not "required to give credit for such things as clothes, toys, and entertainment provided directly to children, or for the actual support provided by the non-custodial parent during short periods of stays with that parent." *Castro v. Castro*, 436 N.E.2d 366, 367 (Ind. Ct. App. 1982). "Concerning clothing, toys, etc., there is available a reasonable inference that the benefits conferred directly upon the child are gifts occasioned by filial love rather than judicially ordered support payments." *Id*. Mother's purchases for T.F. were more in the realm of gifts, rather than akin to the payments of an undefined support obligation in *R.R.F.* As such, we conclude that the occasional provision of food and personal items during her parenting time and before a child support order was in place cannot entitle

Mother to a credit towards her child support arrearage. Therefore, we reverse the trial court's order and remand to the trial court for further proceedings in accordance with this opinion.

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it credited Mother's child support arrearage with nonconforming payments.

Reversed and remanded.

Kirsch, J. and Pyle, J. concur