# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KEVIN A. HOOVER**
Hill Fulwider, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DENNIS F. McCROSSON**
McCrosson & Associates, P.C.
Indianapolis, Indiana

FILED

Jan 30 2013, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW BANKS ASHWORTH, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1205-DR-412 |
| | ) | |
| KATHRYN (ASHWORTH) EHRGOTT, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-0902-DR-5731

**January 30, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Matthew Banks Ashworth (Father), appeals the trial court's Order on modification of child support in favor of Appellee-Petitioner, Kathryn (Ashworth) Ehrgott (Mother).

We affirm in part, reverse in part, and remand.

## ISSUES

Father raises six issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court abused its discretion in calculating Father's 2012 and subsequent child support obligation and income withholding order;

(2) Whether the trial court abused its discretion in determining Father's additional child support obligation based on his 2010, 2011, 2012 bonuses and future irregular income; and

(3) Whether the trial court erred by declining to credit Father for his overpaid child support obligations.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal in this contentious child support dispute. *See Ashworth v. Ehrgott*, 934 N.E.2d 152 (Ind. Ct. App. 2010). Because some of the facts in the prior appeal are relevant to the present dispute, we include them here. Father and Mother were married in 1999 and have two minor children. On October 31, 2006, following the

parties' agreement, the Chancery Court for Knox County, Tennessee dissolved their marriage. Mother was awarded sole legal and physical custody under the divorce decree.

The divorce decree also addressed Father's alimony and child support obligations. Commencing November 1, 2006, Father was to pay Mother alimony of $306,000 in monthly installments of $1,500. However, the first nineteen months of installments were to be paid at $1,000 per month and the deferred portion of $500 would incur interest at 8%. The total deferred amount of $9,500, plus interest, would be due on or before December 31, 2008. The alimony obligation was deemed non-dischargeable in bankruptcy and terminable only on Mother's death or full payment with interest. Alimony payments were tax deductible by Father, while Mother was required to report the alimony as income on her state and federal income tax returns. Child support was calculated at $2,500 per month. This amount was to be recalculated in May 2008 pursuant to the Tennessee Child Support Guidelines. In May 2007, a Tennessee court entered an order clarifying that Father's $2,500 monthly child support obligation represented an upward deviation of $650 in favor of Mother and would be recalculated in May 2008.

In 2007, Mother remarried and relocated to Indiana while Father took a job with U.S. Bank and relocated to California. In June 2008, Father paid Mother $1,160 per month in child support rather than the $2,500 specified the decree. In February 2009, Mother registered the Tennessee child support order in the Marion County Superior Court. In March 2009, the trial court entered a child support income withholding order

directing Father's employer to withhold $576.92 per week, which approximated the $2,500 monthly child support amount specified in the divorce decree. On April 14, 2009, Father filed an emergency petition to stay the income withholding order, alleging "that the $2,500.00 per month amount of child support was only ordered to be paid until May of 2008, at which time is [sic] was recalculated." *Id.* Father also alleged that his living expenses in California and $1,500 monthly alimony payment caused him significant hardship.

On June 2, 2009, Father filed a verified motion to modify his child support obligation and provided his financial declaration which listed his 2009 annual income as $133,500 or $2,292 per week. On June 11, 2009, the trial court modified Father's child support obligation to $500.75 per week. After including the children's educational expenses as additional child support, the trial court entered a child support income withholding order to U.S. Bank in the amount of $731.00 per week, which it later revised to $612.10 per week.

Thereafter, Father appealed, challenging the trial court's calculation of his child support obligation and raising numerous other issues. Two issues relevant to this appeal were whether the trial court erred by deducting alimony payments from Father's gross income for the purpose of calculating child support and by declining to reduce his child support obligation based on his tax bracket. Regarding the first issue, we held that alimony payments were not to be included in determining Father's gross income and remanded to the trial court for recalculation of the weekly gross income. *Id*. at 161. On

4

the second issue, we affirmed the trial court's calculation of the disparate tax rate between Indiana and California as 10.72%. *Id*. at 162-63. However, we remanded to the trial court to calculate credits against Father's child support for his payment of health insurance premiums, preschool expenses, and private school tuition. *Id*. at 162, 164, 166.

On December 7, 2010, following remand, Mother filed her verified petition for modification of child support. Her verified petition alleged that Father was $27,000 in arrears on his alimony obligation and as a result "should not be allowed an adjustment on his income for child support calculation purposes" nor should alimony be deemed received as part of her income for child support calculation purposes. (Appellant's App. p. 22). On December 22, 2010, Mother filed a pre-hearing submission which included her proposed child support obligation worksheet (CSOW) and verified financial declaration. While both the pre-hearing submission and the verified financial declaration stated that Mother's wages for 2010 were $510 per week, exclusive of alimony, Mother's CSOW relied upon the parties' 2009 figures, listing Father's weekly gross income as $2,292 and Mother's as zero, resulting in Father's weekly child support obligation of $422.

That same day, the trial court held a hearing on Mother's verified petition and issued its Order on modification. The CCS records the following jacket entry:

> COURT Approves Attorney Conference Held. Argument Heard. Income withholding order of $422.00/Week does not reflect payment of spousal maintance [sic] therefore, not deductiable [sic] to his income or income to her.

5

(Appellant's App. p. 7). Thereafter, Mother appeared in Father's bankruptcy proceedings as a creditor. She opposed his attempt to discharge the alimony obligation in bankruptcy. On October 27, 2011, Mother's counsel deposed Father and he revealed that he received two bonuses from his employer in 2010 and 2011.

On December 12, 2011, Mother filed another verified petition for modification of child support. She alleged that the last child support modification order occurred in December 22, 2010 and that Father's deposition testimony in the bankruptcy action revealed 2010 and 2011 bonus payments totaling $180,000, which he did not disclose to her or the trial court during the 2010 child support modification proceedings. On April 4, 2012, the trial court held a hearing on the modification petition. That same day, Father filed his verified financial declaration, which listed his 2011 salary as $141,000 and 2011 bonus as $117,000. In his testimony, Father admitted that he did not disclose his 2010 bonus as part of calculating the child support modification in December 2010. Father also admitted that contrary to his verified financial declaration he received a raise, making his salary $146,000, and a bonus of $100,600 in February and March 2012.

On April 24, 2012, the trial court issued its Order. It found that Father had failed to disclose his 2010 and 2012 bonuses and that along with the 2011 bonus, these constituted irregular income under the Ind. Child Support Guidelines. Further, the trial court found that Father's failure to disclose the 2010 and 2012 bonuses amounted to a knowing concealment in violation of Ind. Trial Rules 26(E)(2) and (3) as well as Marion County Family Law Rule 504 governing financial declarations. By failing to "report all

6

of his income at the date of [the] December 22, 2010 Order," the trial court concluded that Father's conduct constituted a knowing concealment in violation of T.R. 26(E)(2). (Appellant's App. p. 15).

The trial court calculated Father's child support obligation commencing April 4, 2012 in the following manner. First, it determined Father's regular salary for 2012 to be $141,000. Second, it reduced this amount by $18,000, which constituted Father's annual alimony obligation under the divorce decree and which, pursuant to this court's decision in *Ashworth*, could not be included in his salary. The remaining amount of $123,000 was then reduced by what the trial court determined was the state tax differential of 5.7% (.9475) between Indiana and California, [1] resulting in Father's 2012 salary for child support purposes as $115,927.50 or $2,229.38 per week. Mother's income for child support purposes was calculated as $733 per week, which consisted of $385 in weekly wages and $348 in weekly alimony payments under the divorce decree. Listing these amounts on a CSOW attached to its April 24, 2010 Order, the trial court ordered Father's weekly child support to be $339.46, commencing April 4, 2012. However, an income withholding order issued contemporaneously with the April 24, 2012 Order listed the amount to be withheld as $348.

---

[1] Although *Ashworth* upheld the trial court's calculation of state tax differential of 10.72%, Father testified at the April 4, 2012 hearing that his 2010 combined California federal and state tax obligation was 27.63% of his adjusted gross income. Applying this amount to the Indiana presumed rate of 21.88%, resulted in a state tax differential of 5.7%. The trial court adopted this amount in its April 24, 2012 Order and neither party challenges it on appeal.

The trial court also considered the effect of Father's failure to disclose his bonuses. It concluded that Father failed to report all of his income at the date of the December 22, 2010 Order. Noting that Mother had not moved under T.R. 60(B) to set aside the December 22, 2010 Order, the trial court invoked its equitable jurisdiction to grant relief. Specifically, the trial court concluded that Father's failure to disclose the bonus payments constituted fraud on the court.

Cognizant that neither the Tennessee decree nor any subsequent child support modification had addressed Father's irregular income, the trial court calculated his additional child support obligation by "allocating a fixed percentage" of Father's bonus payments to child support. (Appellant's App. p. 7). The trial court relied on the Indiana Child Support Guideline 3(A), comment 2(b) to calculate an irregular income ratio.

Referring to the December 22, 2010 Order and its attached CSOW, which showed Father's weekly income and child support obligation as $2,292 and $422, respectively, the trial court calculated the irregular income allocation ratio as .1841. It applied this ratio to Father's 2010, 2011, and 2012 bonuses in the following manner. After reducing Father's 2010 bonus of $21,500 by the state tax differential of .9475, the trial court concluded that Father's bonus eligible for child support was $20,371.25. Applying the ratio of .1841, the trial court awarded a lump sum payment of $3,730.56 to Mother. Utilizing the same methodology for Father's 2011 and 2012 bonuses, the trial court further awarded Mother $20,301.17 for the 2011 bonus and $17,455.53 for the 2012 bonus, resulting in a total lump-sum award of $41,487.26. Finally, it ordered that the

8

additional child support obligation resulting from any subsequent bonuses would be calculated in the same manner using .1841 as the irregular income ratio.

Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Father challenges the trial court's modification of his child support obligation on several grounds. First, he challenges the trial court's calculation of his 2012 and subsequent weekly child support obligation by arguing that the trial court did not account for alimony payments and issued an income withholding order inconsistent with its April 24, 2012 Order. Second, Father argues that the trial court abused its discretion in calculating his additional child support obligation based on his 2010, 2011, 2012, and subsequent employment bonuses. Specifically, he contends that the method of calculating his additional child support resulting from his irregular income amounts to an abuse of discretion; that the trial court's lump sum award of his 2011 bonus represents an impermissible retroactive modification of his child support obligation; and that the trial court abused its discretion by awarding part of his 2010 bonus as additional child support. Finally, Father asserts that the trial court abused its discretion by not addressing his alleged overpayment of child support. We address each contention in turn.

I. *Standard of Review*

The trial court's calculation of child support is presumptively valid. *Martinez v. Deeter*, 968 N.E.2d 799, 805 (Ind. Ct. App. 2012). The trial court's decision regarding child support will be upheld unless it has abused its discretion. *Id*. A trial court abuses

9

its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before it or if it has misinterpreted the law. *Id*. Our standard of review is also governed by the trial court's decision in this case to enter findings of fact and conclusions of law. *See id*. In such instances, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." *Id*. Where, as here, it appears that the trial court issued the findings and conclusions *sua sponte*, the specific findings control only as to the issues they cover. *Id*. A general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id*.

## II. *2012 Child Support Obligation*

We first address Father's two challenges to the trial court's calculation of his 2012 and subsequent child support obligation. Father argues that the trial court abused its discretion by declining to consider his alimony payments to Mother in contravention of our opinion in *Ashworth* and by issuing an income withholding order inconsistent with its April 24, 2012 Order. While Mother concedes that the trial court's findings are inconsistent with its income support order, she contends that the alimony payments she received were payments in arrears and thus not includable in her current income for 2012 child support calculation purposes.

Father argues that evidence at the hearing established that he is currently under a monthly garnishment of $2,530.28 for alimony, and that an additional lump sum of

10

$30,000 was garnished from his February 2012 bonus. The annual total of these garnishments in 2012 would be $60,370 or $1,161 per week. He contends that contrary to this court's decision in *Ashworth*, the trial court did not deduct such payments from his weekly gross income nor increase Mother's weekly gross income by an equivalent amount in calculating his 2012 child support obligation. As a result, he contends that the trial court's calculation of $348 is off by $813, which should be credited to his weekly gross income and added to Mother's weekly gross income.

In *Ashworth*, we determined that the $306,000 payment provision in the parties' divorce decree represented alimony, rather than a property settlement. *Ashworth*, 934 N.E.2d at 160-61. As a result, the "$306,000 payment to [Mother] is in the nature of maintenance and therefore $348.84 should be deducted from [Father's] weekly gross income." *Id*. at 161. The $306,000 was "broken down into [$1,500] monthly payments (or $348.84 per week)." *Id*. at 160.

We conclude that the trial court calculated Father's child support obligation consistently with our opinion in *Ashworth*. The CSOW attached to the trial court's April 24, 2012 Order lists Mother's weekly gross income as $733, which, based on her verified financial declaration, consisted of her weekly wages of $385 and a weekly alimony payment of $348. The trial court determined that Father's gross salary for 2012 was $141,000. It reduced this amount by $18,000 or $1,500 monthly to account for his alimony payments. Father's weekly gross income was calculated as $2,229.38, which included a deduction for the state tax differential. Thus, the effect of the approximate

weekly amount of alimony payments was taken into account by the trial court as instructed by this court in *Ashworth*.

Father also urges us to conclude that the $30,000 lump-sum and the $2,530.28 monthly garnishments represent excess withholdings. However, Father does not contest that these amounts represent "unsatisfied alimony payments which [he] had not made." (Appellant's Br. p. 14). Further, Father did not provide the trial court with records sufficiently detailing the extent of his alimony obligation and arrearage. Although Father's payment records reflect that deductions from his paycheck were taken by his employer, the record does not substantiate what such deductions were for, nor does it contain the garnishment orders upon which Father's wages were garnished. Without this information, we cannot conclude differently from the trial court. Furthermore, Mother testified that the amount she receives through garnishment varies but is roughly $2,100. She also testified that she had not received the $30,000 lump-sum amount. As we held in *Ashworth*, the trial court does not abuse its discretion in not deducting unpaid alimony from Father's weekly gross income. *Ashworth*, 934 N.E.2d at 162. In sum, because Father has not shown that the alimony remitted to Mother by garnishment represents payment on the current amount of alimony, we conclude that the trial court did not abuse its discretion by relying upon the weekly alimony amount specified in *Ashworth*.

Father also contends that the trial court's income withholding order is inconsistent with the amount it ordered. Both the April 24, 2012 Order and its attached CSOW state that Father's support obligation is $339.46. However, the trial court's income

withholding order issued the same day directs U.S. Bank to withhold the amount of $348 per week. The difference is $8.54.

A review of the record reveals that this was likely a simple scrivener's error resulting from an unintended transposition of the alimony obligation of $348 to the income withholding order. Although Mother concedes that this was likely a scrivener's error, she argues that since the trial court used Father's 2011 salary of $141,000 rather than his 2012 salary of $146,000, there is no need to remand for a difference of $8.54 per week. Even though Father requests us to remand to the trial court to issue a corrected income withholding and credit the difference to his obligation to pay a portion of his 2012 bonus, we decline Father's request to credit a portion of his 2012 bonus payable to Mother as child support, but nevertheless remand to the trial court to determine the amount of credit owed and the manner in which it shall be applied.

### III. *Irregular Income Allocation*

Father next argues that the trial court abused its discretion in calculating his additional child support obligation based on his 2010, 2011, 2012, and subsequent employment bonuses. Specifically, he contests the trial court's use of an irregular income allocation ratio of .1841 and the trial court's methodology in determining his irregular income. Further, he argues that the trial court abused its discretion in deeming his 2011 and 2010 bonuses as irregular income.

### A. *Irregular Income Allocation Ratio*

13

The trial court found that Father's "bonus payments by his employer constitute substantial irregular income and had the marriage remained intact, the minor children would have benefitted." (Appellant's App. p. 16). Weekly gross income is broadly defined when determining parents' income in the child support guideline calculation. *See Knisley v. Forte*, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007), *reh'g denied*. Income from any source, including bonuses, may be considered. Child Supp. G. 3(A). While a very fact-sensitive determination, irregular income may be included in the total income approach taken by the Guidelines. *Knisley*, 875 N.E.2d at 340.

The Guidelines suggest that an equitable method of treating irregular income may be to require the obligor to pay a fixed percentage of the irregular income rather than determining the average of irregular income and including it in the obligor's gross income calculation. *Meredith v. Meredith*, 854 N.E.2d 942, 948 (Ind. Ct. App. 2006). Specifically, comment 2(b) to Guideline No. 3 provides:

> One method of treating irregular income is to determine the ratio of the basic child support obligation (line 4 of the worksheet) to the combined weekly adjusted income (line 3 of the worksheet) and apply this ratio to the irregular income during a fixed period. For example, if the basic obligation was $110.00 and the combined income was $650.00, the ratio would be .169 ($110.00 / $650.00). The order of the court would then require the obligor to make a lump sum payment of .169 of the obligor's irregular income received during the fixed period.

Here, the trial court relied on its December 22, 2010 Order adopting Mother's CSOW to arrive at an irregular income allocation ratio of .1841. That CSOW showed Father's weekly child support obligation as $422. Dividing $422 by the combined adjusted weekly income of $2,292 resulted in an irregular income ratio of .1841.

14

However, Father contends that the .1841 irregular income ratio is incorrect in light of the CSOW attached to the April 24, 2012 Order. Using the April 24, 2012 Order's CSOW, he points out that the weekly child support obligation of $456 divided by $2,963.38, the combined weekly adjusted income of the parties, yields a ratio of .1539. In response, Mother insists that the trial court had authority and discretion to use the irregular income allocation ratio based on the CSOW attached to the December 22, 2010 Order. We do not agree.

As noted before, the December 22, 2010 Order relied upon the parties' financial declarations filed in 2009. The CSOW attached to the April 24, 2012 Order relies upon the parties' most recent financial declarations. By using an income allocation ratio based on the parties' 2009 financial data, we conclude that the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Accordingly, we reverse the trial court's use of .1841 as an irregular income ratio applicable Father's 2012 and subsequent bonuses and remand to the trial court to calculate and apply an irregular income ratio using the CSOW attached to its April 24, 2012 Order.

### B. *Methodology*

Father next challenges the trial court's use of the methodology provided in comment 2(b) to Child Support Guideline No. 3. That comment cautions that use of the irregular income allocation ratio "will result in an overstatement of support due" under certain circumstances:

> The use of this ratio will not result in an exact calculation of support paid on a weekly basis. It will result in an overstatement of the additional

support due, and particularly so when average irregular income exceeds $250.00 per week or exceeds 75% of the regular adjusted Weekly Gross Income. In these latter cases the obligor may seek to have the irregular income calculation redetermined by the court.

Father argues that the trial court abused its discretion by using the percentage methodology to determine his irregular income. In support, he provides two sample calculations to illustrate that the percentage method used by the trial court overstates his weekly child support obligation by $143.08 and $112.62, respectively. He therefore requests that only 10% of his 2012 and future bonuses constitute additional child support, which in his view, overstates his weekly child support obligation only by $14.34.

We note that Father did not present this argument to the trial court and it is therefore waived. *See Heaphy v. Ogle*, 896 N.E.2d 551, 557 (Ind. Ct. App. 2008). Waiver notwithstanding, Father's proposed CSOW offered at the hearing, which took the average amount of his 2010 through 2012 bonuses and combined them with his current salary, calculated a weekly child support obligation of $348. In *Martinez*, we remanded a child support calculation of irregular income based on the parties' agreement that a percentage method be used to determine the child support obligation from irregular income. *Martinez*, 968 N.E.2d at 807. On remand, we held that the trial court could determine the ratio at its discretion as the parties agreed on the method but not the ratio. *See id*.

We see no reason to disturb the trial court's discretion here. Father's argument does not reject the methodology used in the Guidelines, but only the allocation ratio.

16

Accordingly, we find no abuse of discretion with the trial court's decision to use the income allocation method to determine Father's additional child support obligation.

## C. *2011 Bonus*

Father also challenges the allocation of his 2011 bonus as irregular income. He argues that the trial court's award of $20,301.17 based upon his 2011 bonus represents an impermissible retroactive modification of child support obligation.

The trial court found that Father received a bonus of $117,000 in February 2011, which he reported on his verified financial declaration on April 4, 2012. The trial court reduced the bonus by the state tax differential of 5.7% and applied an irregular income factor of .1841, resulting in a lump-sum award of $20,301.87. Father contends that because his bonus was paid in February 2011 and Mother's petition for modification was filed on December 12, 2011, the trial court erred by ordering him to pay any sum prior to the date of the petition to modify.

Generally, retroactive modification of child support is erroneous if the modification purports to retroactively modify a delinquent child support obligation and relates back to a date earlier than that of the petition to modify. *See Knisely*, 875 N.E.2d at 342. While the general rule has certain exceptions not relevant here, we have also permitted a retroactive payment of child support under different circumstances. *In R.R.F. v. L.L.F.*, 935 N.E.2d 243, 248 (Ind. Ct. App. 2010), we ordered the father to pay child support for a period of time predating the filing of the mother's petition to modify child support obligation. We concluded that because that the parties' divorce decree did

not address and no order had issued upon the father's obligation to pay child support between the child's eighteenth birthday and his twenty-first birthday, ordering the father to pay child support for a four-month period preceding the filing of the petition was not a retroactive modification of support. *Id*. Likewise, in *Knisley*, we affirmed the trial court's retroactive award of child support based upon the father's receipt of a personal injury settlement payment seven months prior to the mother's petition to modify. *Knisley*, 875 N.E.2d at 341-42.

Here, it is undisputed that neither the parties' divorce decree nor any modification order addressed Father's irregular income. Further, Father's 2011 bonus, though paid in February 2011, was listed in his April 4, 2012 verified financial declaration. Father himself testified that he believed his bonus to be part of his regular income by urging the trial court to adopt an average of his three years of bonuses in calculating his 2012 child support obligation. Under these circumstances, we decline to find an impermissible retroactive modification of child support. Further, because Father makes no challenge to the trial court's use of .1841 as the applicable income allocation ratio with respect to the 2011 bonus, we affirm the trial court's award of $20,301.17 in additional child support.

D. *2010 Bonus*

Father also argues that the trial court abused its discretion by ordering him to pay $3,730.56 as additional child support based on his 2010 bonus. The trial court found that Father did not disclose his 2010 bonus and concluded that this amounted to a knowing concealment in violation of T.R. 26(E)(2) and (3) as well as Marion County Family Law

Rule 504 governing financial declarations. Concluding that its December 22, 2010 Order was obtained by fraud upon the court, the trial court invoked its equitable jurisdiction to grant relief since Mother had not moved under T.R. 60(B) to set the Order aside. Referring to the December 22, 2010 Order and its attached CSOW, which showed Father's weekly income and child support obligation as $2,292 and $422, respectively, the trial court calculated an irregular income allocation ratio of .1841 and then applied this to Father's tax-adjusted 2010 bonus amount of $20,263.75,[2] resulting in an award of $3,730.56.

We note that Father does not challenge the trial court's findings on his knowing concealment of the 2010 bonus.[3] Instead, he argues that his bonus is already reflected in the December 22, 2010 Order and that the lump-sum award "essentially twice awards [Mother] a portion of [Father's] bonus." (Appellant's Br. p. 8). We disagree.

The trial court's December 22, 2010 Order was issued in response to Mother's December 7, 2010 modification petition. In her pre-hearing submission, Mother specifically sought a determination of Father's "child support obligation commencing

_____

[2] Father points out the April 24, 2012 Order inconsistently states the tax-adjusted amount, with Paragraph No. 47 listing it as $20,371.25 and footnote no. 3 listing it as $20,263.75. However, Father adopts the award amount of $3,730.56 in his argument, which corresponds to the amount awarded by the trial court in Paragraph No. 48 of the Order.

[3] In an attempt to avoid waiver, Father argues in his reply brief that Mother failed to initiate discovery by serving him a blank financial declaration in 2010. As a result, he contends that he was under no obligation to update his 2009 financial declaration to include his 2010 bonus. However, "[a]ppellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal." *In re Paternity of P.B.*, 932 N.E.2d 712, 725 n. 12 (Ind. Ct. App. 2010). Thus, because Father failed to contest the trial court's finding of fraud upon the court in his appellate brief, the issue is waived.

June 11, 2009." (Appellant's App. p. 24). Mother's CSOW submitted in support relied on the parties' 2009 financial information, which listed Father's weekly income as $2,292 and Mother's income as zero because Mother argued that the trial court should not figure alimony in either party's income because Father was in arrears. The weekly child support obligation resulting from this data was $422, which the trial court ordered as evidenced by the December 22, 2010 CCS entry.

At the 2012 hearing, Father's counsel admitted that the amount of $422 "was based upon a prior number." Though Father's counsel attempted to argue that this amount may have included Father's prior, albeit nominal, bonuses, Mother's counsel clarified that the "$422 came from that [CSOW] that we were all working from back in 2009," and Father's counsel relented by stating "the $422 is fine." (Tr. pp. 20-21). Consequently, Father's 2010 bonus of $21,500 could not have been relied upon by the parties in calculating the December 22, 2010 Order because that Order was based on 2009 financial figures. Father's argument that Mother has twice been awarded for the bonus fails for the same reason. Accordingly, the trial court did not abuse its discretion by awarding a portion of his 2010 bonus as additional child support.

IV. *Overpayment*

Finally, Father argues that the trial court abused its discretion by not addressing his alleged overpayment of child support. Specifically, he asserts an overpayment of "child support to [Mother] in the amount of [$5,794] covering the period of [June 2008] through [December 2010]." (Appellant's Br. p. 16). Father claims that "[s]uch

20

overpayment resulted from a combination of varying amounts ordered by the trial court through income withholding orders and then modification of a portion of those amounts" by this court's opinion in *Ashworth*. (Appellant's Br. p. 16). He requests that a credit be applied to that portion of his 2012 and future bonuses payable as child support. In response, Mother argues that Father failed to raise the issue at the December 22, 2010 hearing and further that Father is barred by the equitable doctrine of unclean hands.

Our opinion in *Ashworth* determined that the following amounts should be credited against Father's child support obligation. First, Father was to receive credit against his child support obligation for health insurance premiums. *Ashworth*, 934 N.E.2d at 162. Next, Father was to receive credit for payment of his daughter's preschool expenses since there was no evidence that Mother had worked or sought a job during the relevant period. *Id*. at 164. Finally, Father was to receive credit for his son's private school tuition as the parties had not agreed on private schooling for their children. *Id*. at 166. Calculation of these credits was to be determined on remand. *Id*. at 162, 164, 166.

We do not agree that the trial court abused its discretion by not addressing Father's claim for reimbursement. Father did not present the trial court or this court with information sufficient to provide a meaningful review of his claims. At the hearing, Father offered a spreadsheet purporting to compare his actual monthly child support paycheck deductions with an amount purporting to constitute the child support calculation resulting from this court's opinion in *Ashworth*. However, Father has not

provided details to determine what amounts were deducted and what amounts should have been credited. More importantly, Father had an opportunity on remand to ensure that these amounts were properly credited to him. However, the parties testified that the December 22, 2010 Order represented the parties' agreement on Father's child support obligation. Consequently, we find that Father has invited the error he complains of and is therefore estopped from further seeking credit for amounts overpaid from June 2008 to December 2010. *See Reinhart v. Reinhart*, 938 N.E.2d 788, 790-93 (Ind. Ct. App. 2010).

CONCLUSION

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in calculating Father's 2012 and subsequent weekly child support obligation. We conclude that the trial court abused its discretion by using an irregular income factor based upon the parties' prior financial declarations to determine Father's additional child support obligation for his 2012 and subsequent irregular income. However, the trial court did not abuse its discretion in its use of an income allocation ratio to determine the amount of additional child support. Further, we hold that the trial court did not abuse its discretion in calculating Father's child support obligation based on his irregular income for 2011 and 2010. We reverse and remand with instructions to 1) apply the income allocation factor of .1549 to Father's 2012 and future bonuses; and 2) correct a scrivener's error in the April 24, 2010 Income Withholding Order and calculate the resulting credit owed to Father and its repayment method.

Affirmed in part, reversed in part, and remanded.

BAKER, J. and BARNES, J. concur