**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 30 2014, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA L. MARTIN**
Martin Law Offices, PC
Angola, Indiana

ATTORNEY FOR APPELLEE:

**WM. JOSEPH CARLIN JR.**
Kruse & Kruse P.C.
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOAA I. EBRAHIM, | ) | |
| | ) | |
| Appellant-Petitioner/Cross-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 76A03-1309-DR-368 |
| | ) | |
| ESSAM OTEFI, | ) | |
| | ) | |
| Appellee-Respondent/Cross-Appellant. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-1209-DR-320

**June 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Doaa I. Ebrahim ("Mother") appeals the denial of her motion for relief from judgment following the trial court's decree dissolving her marriage to Essam Otefi ("Father"). Mother maintains that the trial court failed to comply with its local trial rule concerning verification of marital assets and debt and that she was prejudiced as a result of counsels' stipulation to the division of marital assets and liabilities. Father cross-appeals, claiming that the trial court abused its discretion in denying his motion to correct error based on its treatment of his irregular overtime income in calculating his child support obligation. Finding that Mother waived her challenge to the trial court's failure to enforce its local trial rule by not objecting before or during the final hearing and finding that the trial court acted within its discretion in calculating the child support attributable to Father's irregular income, we affirm in all respects.

**Facts and Procedural History**

Mother and Father were married in their home country of Egypt in May 2006. They relocated to Steuben County, where Father works as a veterinarian for the U.S. Department of Agriculture. Two children were born of the marriage. In September 2012, Mother filed a petition for dissolution of marriage and motion for provisional orders. A chronological case summary ("CCS") entry dated September 24, 2012, states in part,

> This case will not be set for final hearing until (1) Mediation has been attempted, with parties to agree on mediator if at all possible, (2) If custody and/or parenting time is an issue then there must be filed with this court a custodial evaluation with costs allocated between Mother and Father based upon their percentage share of gross weekly income, (3) There is filed with this court by the parties a Property, Indebtedness and Earnings Disclosure

2

Statement, (4) Both parties enroll and attend the "Helping Children Succeed After Divorce" seminar required by the court, and (5) An appraisal done on all marital assets upon which the parties disagree as to value.

Appellant's Amended App. at 3.

In October 2012, Mother filed a provisional asset and expense statement, and the trial court held a provisional orders hearing. In December 2012, the trial court held an unrecorded hearing with parties and counsel present. The court set the final hearing for April 2, 2013, and it was continued on Father's motion to July 3, 2013. The parties did not file their Property, Indebtedness and Earnings Disclosure Statements as listed in the trial court's September 2012 CCS entry and as required by Steuben County Domestic Relation Rule LR76-DR-4(F) prior to the final hearing.

At the final hearing, counsel for both parties indicated that there was a stipulated property settlement agreement, introduced as Respondent's Exhibit A, which the trial court adopted and incorporated into the final decree of dissolution. Exhibit A consists of a one-page list of marital assets and debt with stated values and an "H" or "W" designation for each listed entry. Father's counsel addressed Exhibit A at the hearing, after which the trial court asked if that was the stipulation of the parties. Mother's counsel answered affirmatively. The transcript does not indicate any objection raised or continuance sought by either party based on the absence of Property, Indebtedness and Earnings Disclosure Statements. The trial court issued the final decree of dissolution on July 16, 2013.

In August 2013, Mother filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B), asserting that she was denied a fair trial due to the trial court's failure to

3

comply with local rule LR76-DR-4(F) requiring the filing and exchange of Property, Indebtedness and Earnings Disclosure Statements. She attached an affidavit in which she averred that she neither understood the terms of the settlement agreement (due to her allegedly limited command of English) nor agreed to them with her counsel. She also asserted that Father had misrepresented his assets and liabilities to the trial court. The trial court denied her motion for relief from judgment, and she now appeals. Father cross-appeals the trial court's denial of his motion to correct error concerning the trial court's calculation of child support attributable to his irregular overtime income. Additional facts will be provided as necessary.

## Discussion and Decision

### Section 1 – Mother's Motion for Relief from Judgment

Indiana Trial Rule 60(B) states that upon motion and upon such terms as are just, the trial court may relieve a party from a judgment for a variety of reasons.[1] The burden is on the moving party to establish the ground for relief under Trial Rule 60(B). *In re Paternity of*

---

[1] The grounds upon which the moving party may seek relief from judgment include,

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

….

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

Ind. Trial Rule 60(B).

*P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010).  We review the trial court's ruling on a Trial Rule 60(B) motion using an abuse of discretion standard.  *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008).  An abuse of discretion occurs only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and inferences drawn therefrom.  *P.S.S.*, 934 N.E.2d at 741.

Mother asserts that the trial court abused its discretion by failing to follow its local rule of court concerning disclosure statements.  Steuben County Local Domestic Relation Rule LR76-DR-4 states in pertinent part,

> E.    **Property, Indebtedness, and Earnings Disclosure Forms**.
>
> The Court has prepared and makes available to counsel a Property, Indebtedness, and Earnings Disclosure Form as set forth at Appendix 3.
>
> F.    **Court Time**.  Court time for a final contested hearing on a Petition for Dissolution of Marriage will not be scheduled until a party has **fully completed** and filed a Property, Indebtedness and Earnings Disclosure Form.  Thereafter, the following rules apply:
>
> > (1)  A copy of said form, when served upon the opposing party, if represented by counsel, shall be deemed to be a Request for Admissions by the opposing party that the information contained on said form is true.
> >
> > (2)  The opposing party shall respond to such Request for Admissions by completing such party's respective portion of the disclosure form and filing same with the Court within thirty (30) days from date of service.  **The responding party shall make his or her disclosures on a copy of the SAME FORM served by the opposing party so that the copy filed with the Court by the responding party contains both parties' disclosures on the same form.**
> >
> > (3)  In the event that the party being served with the initial Property, Indebtedness and Earnings Disclosure Form does not,

5

within thirty (30) days from the date of service, file his or her respective portion of the disclosure form, if represented by counsel, the information contained in the Property, Indebtedness and Earnings Disclosure Form then on file shall be deemed to be admitted as fact by all parties.

Appellant's Amended App. at 150.

Father claims that Mother should have objected to the trial court's failure to enforce the rule and to the stipulation regarding division of assets and liabilities. A trial court's failure to enforce a mandatory local court rule may amount to reversible error; however, the party seeking its enforcement may waive the issue by failing to object. *See Fobar v. Vonderahe*, 771 N.E.2d 57, 58 n.1 (Ind. 2002) (summarily affirming this Court's finding that wife's failure to object amounted to waiver of issue regarding trial court's error in failing to abide by its local rule requiring filing of asset disclosure statements). With respect to the stipulation, Father also asserts that Mother is responsible for her counsel's representations in the proceedings. It is a longstanding rule that "absent fraud or collusion between the attorney and the opposing side, acts or omissions of the attorney are attributable to the client." *Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1255 (Ind. Ct. App. 1999), *trans. denied* (2000). This includes circumstances in which counsel has implied authority to bind a client by settlement of a claim or by stipulation. *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998) (claim settlement); *Bramblett v. Lee*, 162 Ind. App. 654, 657, 320 N.E.2d 778, 780 (1974) (stipulation of paternity), *cert. denied* (1976).

Here, the local rule states that a final hearing will not be scheduled until the disclosure forms have been filed. Neither party disputes the fact that the disclosure forms were never

submitted, and the hearing transcript contains no reference to the absence of such forms. Father asserts that Mother waived this issue by failing to raise it before or during the hearing or to object when counsel addressed the parties' stipulation regarding the division of marital assets and liabilities at the hearing. Mother was present during all of the proceedings. She now maintains that she never personally saw or agreed to the contents of Respondent's Exhibit A concerning the division of marital assets and liabilities, that her counsel gave her verbal notice of the stipulation just moments before the final hearing, that the trial court never questioned her personally to confirm her agreement or disagreement, and that she was hindered from objecting due to her allegedly limited command of English.

The transcript shows that at the beginning of the hearing, the parties' counsel briefly addressed the stipulation concerning the division of assets and liabilities when Father's counsel introduced Exhibit A. Because other issues such as custody and support were hotly contested, a relatively limited amount of hearing time was spent on the division of marital property. With respect to Mother's relinquishment of any post-dissolution claims against any of the parties' property in Egypt, Father's counsel told the trial court, "[W]e [counsel] just discussed this walking down the hallway." Tr. at 6. Mother's counsel twice responded affirmatively when asked if the property stipulation had been properly resolved. The trial court then asked Mother's counsel, "[D]oes your client in fact agree to that?" and counsel responded, "Yes, Your Honor." *Id*. at 6-7.

Recently, in *Ponce v. State*, No. 20S04-1308-PC-533, 2014 WL 2535244 (Ind. June 5, 2014), our supreme court emphasized English proficiency as an important circumstance when

7

evaluating whether a defendant has waived his or her rights. There, the court examined whether a criminal defendant with limited English proficiency was properly advised of the constitutional rights that he was waiving by pleading guilty. The *Ponce* court held that the defendant's guilty plea must be vacated because the translator had failed to provide him with an accurate translation of his rights. *Id.* at *5. Although *Ponce* involved a criminal defendant, we find it instructive, especially in its emphasis on full and meaningful participation in legal proceedings for those with limited English proficiency. *Id.* at *6.

Here, Mother is an Egyptian native who began learning English when she moved to the United States in 2006. She claims that her English proficiency is so limited that it hindered her ability to object, and that as such, she could not have effectively waived her challenge to the trial court's failure to enforce its local rule or to the stipulation that followed. In this vein, we find the evidence conflicting. Father characterizes Mother as a proficient teacher of English who helped their children become proficient in English. The executive director of the Steuben County Literacy Coalition testified that Mother was employed there as a translator and tutor of Arabic-speaking students who were preparing for English standardized tests. Father also cites Mother's numerous requests for clarification during cross-examination as evidence of her willingness to assert herself to ensure that her answers were accurate and to correct Father's counsel when she found his questioning objectionable. Based on our reading of the written transcript, it appears that many of Mother's responses were given in broken English. However, the trial court was in a better position than we to assess Mother's English proficiency, especially as it affects her demeanor, comprehension,

8

and ability to raise objections to the court. Although the better practice would have been for the trial court to address Mother directly to ensure that she agreed on the record to the stipulated matter, especially in light of *Ponce*, we will not second-guess the trial court in its assessment of Mother's level of English proficiency and its implications concerning waiver. Based on the foregoing, we conclude that Mother waived her challenge to the division of marital assets and liabilities. Consequently, we conclude that the trial court acted within its discretion in denying Mother's motion for relief from judgment.

**Section 2 – Father's Motion to Correct Error**

In his cross-appeal, Father asserts that the trial court erred in denying his motion to correct error, in which he challenged the court's treatment of his irregular overtime income for purposes of calculating his child support obligation. "The trial court's calculation of child support is presumptively valid." *Ashworth v. Ehrgott*, 982 N.E.2d 366, 372 (Ind. Ct. App. 2013). When reviewing the trial court's ruling on a motion to correct error or the trial court's child support calculations, we apply an abuse of discretion standard. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010) (motion to correct error), *trans. denied* (2011); *Ashworth*, 982 N.E.2d at 372 (child support calculation). Where the trial court's judgment includes findings of fact and conclusions thereon, we will not set aside the findings or judgment unless they are clearly erroneous. *Ashworth*, 982 N.E.2d at 372. Where, as here, the trial court issued its findings and conclusions sua sponte, the specific findings control only as to the issues the cover. *Id*. With respect to issues not covered in the findings, we may affirm on any theory supported by the record. *Id*.

In its original decree, the trial court made specific findings with respect to the calculation of Father's overtime income:

8.  The Court finds that there should be an upward adjustment in Father's Child Support Payment Obligation. Father works a substantial number of overtime hours. They are not, however, always the same number of overtime hours per pay period.

9.  To compensate Mother for Father's underpayment of child support if Father continues to receive substantial compensation for working overtime, Father shall on or before January 31 of each year provide to Mother a copy of his W-2 which will reflect his total gross earnings for the preceding year. There shall then be subtracted from that year's total gross earnings Father's base annual salary of $75,681.00. This number will reflect the gross dollars earned by Father which have yet to be accounted for in determining Father's total child support obligation.

10. The Child Support Obligation Worksheet attached hereto reflects that for each gross dollar of income earned by Father per week he pays 23% of each of those dollars as child support ($340.00 ÷ $1,455.00 = 23%).

11. In addition to Father paying base child support in the amount of $340.00 per week, Father shall on or before February 28 of each year for so long as there remains an unemancipated minor child, or until further order of this Court, pay directly to Mother 23% of all gross earnings he receives in excess of $75,681.00.

Appellee's Amended App. at 2-3.

Indiana Child Support Guideline 1 states that child support should be calculated to reflect the standard of living the children would have enjoyed had the marriage not been dissolved. Child Support Guideline 3(A) defines weekly gross income broadly, to include income from any source. Guideline 3(A) expressly includes overtime income in the definition of a parent's weekly gross income. The treatment of a parent's irregular overtime income is, by nature, fact-sensitive. *Ashworth*, 982 N.E.2d at 374. The Guideline suggests

10

that "an equitable method of treating irregular income" may be to require a parent to pay a

fixed percentage of his or her irregular income rather than determining the average of

irregular income and including it in the parent's gross income calculation. *Id.* Comment 2(b)

to Guideline 3 elaborates on the treatment of a parent's irregular overtime income when

calculating his or her child support obligation, stating in part,

> When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.
>
> One method of treating irregular income is to determine the ratio of the basic child support obligation (line 4 of the worksheet) to the combined weekly adjusted income (line 3 of the worksheet) and apply this ratio to the irregular income during a fixed period. For example, if the basic obligation was $110.00 and the combined income was $650.00, the ratio would be .169 ($110.00 / $650.00). The order of the court would then require the obligor to make a lump sum payment of .169 of the obligor's irregular income received during the fixed period.
>
> The use of this ratio will not result in an exact calculation of support paid on a weekly basis. It will result in an overstatement of the additional support due, and particularly so when average irregular income exceeds $250.00 per week or exceeds 75% of the regular adjusted Weekly Gross Income. In these latter cases the obligor may seek to have the irregular income calculation redetermined by the court.

Father does not challenge the trial court's determination of his base support

obligation. Instead, he asserts that the trial court abused its discretion in using the percentage

methodology described in Comment 2(b) to calculate his obligation attributable to his

irregular overtime income. He characterizes this issue as one of first impression and cites

11

two cases as distinguishable. *See Ashworth*, 982 N.E.2d at 377-78 (concluding that father waived his challenge to trial court's decision to use Comment 2(b)'s percentage methodology by failing to raise issue below but noting that he essentially challenged the ratio, not the methodology itself); *see also Martinez v. Deeter*, 968 N.E.2d 799, 805-06 (Ind. Ct. App. 2012) (remanding for recalculation where parties agreed to use percentage methodology but disagreed on ratio and where trial court issued conflicting findings on amount owed).

According to Father, his argument is distinguishable from those at issue in *Ashworth* and *Martinez* because he actually challenges the methodology (not the ratio applied), and because he and Mother never agreed to the trial court's use of the methodology in the first place. We see nothing in Comment 2(b) indicating that the percentage methodology may be applied only by agreement of the parties. Instead, the Comment simply lists the percentage methodology as "[o]ne method of treating irregular income." Admittedly, the Comment also includes a caveat that the percentage methodology may result in an overstatement in certain circumstances where the irregular income exceeds a certain amount, that is, $250 per week or seventy-five percent of gross weekly income. Essentially, Father's argument is that because his *2012* irregular income exceeded the precautionary threshold and resulted in an overstatement of support due, the trial court abused its discretion by using the percentage methodology at all.

We disagree with such a reading of Comment 2(b). Immediately after the caveat concerning a possible overstatement of support, the Comment includes this prescription: "In these latter cases the obligor may seek to have the irregular income calculation redetermined

by the court." We interpret this to mean that for any year in which the percentage methodology treatment of irregular income results in an overstatement of support, the obligor may simply file a motion seeking an adjustment *for that year*. In other words, Comment 2(b) deals with irregular income, which, by nature, cannot be predicted with accuracy; and as such, the Comment outlines a methodology for calculating it, a caveat for circumstances when its accuracy may go awry, and a prescription for curing any such inaccuracy. To hold that an abuse of discretion has occurred any time a parent's irregular income subsequently and/or temporarily crosses the precautionary threshold would be to disregard a substantial portion of the Comment. We decline Father's invitation to do so and find no clear error in the trial court's use of the percentage methodology concerning his irregular overtime income. As such, we conclude that the trial court acted within its discretion in denying Father's motion to correct error. Accordingly, we affirm.

Affirmed.

BAKER, J., and BARNES, J., concur.