## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2019, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Flora
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Robert J. Hardy
Auburn, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mischelle R. Musser,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Michael A. Musser,<br>*Appellee-Respondent* | May 16, 2019<br><br>Court of Appeals Case No.<br>18A-DR-1765<br><br>Appeal from the Steuben Superior<br>Court<br><br>The Honorable William C. Fee,<br>Judge<br><br>Trial Court Cause No.<br>76D01-0710-DR-391 |

**Altice, Judge.**

### Case Summary

[1] In 2007, Mischelle R. Musser (Mother) filed a petition to dissolve her fifteen-year marriage to Michael A. Musser (Father), with whom she has five children. The trial court entered a provisional order in May 2009, which provided that in

lieu of child support Father would pay the monthly payments for the second mortgage on the marital residence. A final dissolution order, addressing division of assets, child support, and child custody, was entered in September 2017. Both parties filed motions to correct error, which the trial court granted in part and modified the dissolution order accordingly.

[2] On appeal, Mother contends that the trial court erred when calculating Father's child support obligation, alleging that a larger weekly income figure should have been used for Father. Similarly, Father challenges the child support order, but he argues that the trial court improperly included irregular income in the calculation of his weekly income. Father also notes that the trial court failed to specify how the award of retroactive child support, covering a period of ten years, was to be calculated and paid.

[3] We affirm and remand with instructions.

## Facts & Procedural History

[4] Mother and Father were married on August 31, 1992, and subsequently had five children together born between 1992 and 2005. In October 2007, Mother filed for dissolution of their marriage, which had been tumultuous over the years and included a protective order against Father in July 2002. Following their separation, Mother remained in the marital home with the children.

[5] The trial court entered a stipulated provisional order on May 20, 2009, regarding custody, support, and property. Relevant here, the order provided:

3.  That the parties have stipulated that the Child Support Worksheet attached as exhibit 1, reflects the true income figures of the parties for purposes of calculation of child support. Further, the parties stipulate that grounds for deviation from the Child Support Guidelines exists [sic].  Deviation is based upon the fact that father takes sole responsibility for making payment on the second mortgage of the marital residence that will be occupied by mother and children….

5.  That Mother shall have sole possession of the marital residence and shall be solely responsible for the payment of the primary mortgage and the utilities and any other costs associated with the marital residence except for real estate taxes.

*Appellee/Cross Appellant's Appendix* at 44-45.  The attached support worksheet indicated weekly gross incomes of $410.00 and $354.46 for Father and Mother, respectively.  Pursuant to the worksheet, Father's recommended support obligation was $139.44 per week.

[6]  For reasons unclear in the record, the final dissolution hearing did not commence until July 28, 2017, nearly ten years after the filing of Mother's dissolution petition and eight years after entry of the provisional order.[1]  At the hearing, Mother presented substantial evidence of Father's deception, dissipation of assets, and hidden income.  Specifically, since May 2013 and continuing through the hearing, Father had been "flipping" houses "to make some more money." *Transcript Vol. I* at 182.  He had purchased four properties

---

[1] At some point during this period, Father was tried and acquitted of child molest charges involving one of his daughters.  This might account for some of the delay.

during this time and had sold three for a profit and expected to sell the fourth at some point in the future when he was done working on it. Father had gross earnings on the three sold properties between 2014 and 2016 totaling $186,000, but he did not reveal any of this income in his pretrial disclosures. He disclosed only the income from his job as a general laborer, at which he indicated at trial that he made $14 per hour.

[7] Additionally, Mother presented evidence that Father had led her to believe there was a second mortgage on the marital home when, in fact, there was none. Thus, Father had avoided child support payments during the lengthy dissolution proceedings and had not been paying a second mortgage on the marital home.

[8] After the provisional order in 2009, Father began paying the mortgage payments for separate real estate, a forty-acre farm.[2] A mortgage of over $32,000 still existed on the farm at the time of the final hearing. However, Father testified that he and Mother had transferred the farm to his father by quit claim deed in October 2002. The trial court ultimately found that Mother's signature on the deed had been forged and that the transfer was a "sham". *Appellant's Amended Appendix Vol. 2* at 42. The court determined that the farm constituted (dissipated) marital property with a value of $220,000.

---

[2] Before the provisional order, Mother had been making these payments along with the mortgage payments on the marital residence, believing that this was a second mortgage on the marital home.

[9]     On September 6, 2017, the trial court issued its dissolution order with findings of fact and conclusions. With respect to the parties' incomes, the order provided:

> 9. [Father] is employed at Halex making $14.00 per hour and averaging forty (40) hours per week. Husband's gross weekly income is $560.00 from employment. [Father's] employment income has remained relatively stable since a few months after the date of separation…. Pursuant to the testimony of the Steuben County Assessor, Kimberly Johnson, and the Chief Deputy Recorder, Dani Lou Parrish, [Father], since the date of separation, has purchased numerous real estate parcels, namely:
>
> > A. 1445 W 100N, Angola, IN. Said property was purchased May 1, 2013 and sold on February 15, 2016. Said property was purchased for $30,000.00 and was sold for $105,000.00.
> >
> > B. Lane 110A, Hogback Lake, IN. Said property was purchased on September 26, 2014 [sic] for $10,000.00 and was sold on September 26, 2014. The assessed value of said property was $38,000.00.
> >
> > C. 202 Wabash, Hudson, IN. Said property was purchased on July 16, 2015 for $17,500.00 and was sold on October 27, 2016 for $101,000.00.
> >
> > D. 905 Oakcrest Drive, Angola, IN. Said property was purchased on July 18, 2016 for $75,000.00, with an assessed value of $109,400.00. Said property has not yet been sold….

E. The properties listed in subsection A and B were purchased from God's Lighthouse of New Beginnings, a church where [Father's] relatives are the Pastor and were three (3) trustees approving the sale of the property, including his mother and brother….

10. [Father] testified that the properties listed above were owned jointly with his brother. However, Dani Lou Parrish, from the office of the Steuben County Recorder, testified that all of the deeds for the above properties had [Father] listed as the sole owner.

11. [Father] did not list any income from the sale of the real estate listed above as income on the parties' Property, Indebtedness and Earnings Disclosure.… Therefore, the Court must use the values for said property that can be documented, as well as accept as valid the deeds that [Father] executed himself. Therefore, the Court finds that [Father] had earnings of $75,000.00 for the property located at 1445 W 100N, Angola, IN; $28,000.00 for the property located at Hogback Lake; and $83,500.00 for the property in Hudson, IN for a total of $186,000.00 [sic]. However, it is reasonable to assume that [Father] incurred business related expenses and paid taxes on these transactions. Further, the Oakcrest Drive property was likely purchased with the proceeds and should be subtracted. The Court finds a reasonable estimate of this income is $74,000.00. The $74,000.00 was earned over three (3) years. [Father's] average yearly income from real estate was $24,790.00. On a weekly basis, this constitutes income of $476.73.

12. [Mother] is on Social Security Disability receiving monthly benefits in the sum of $1,671.00. As a result of [Mother's] disability, [she] also receives Social Security benefits for the parties' two (2) unemancipated children … each in the sum of $278.00 per month.… [Mother's] gross monthly income is $2,227.00 or gross weekly income of $513.92….

*Id.* at 30-31.

[10] Using the above income figures,[3] the trial court set Father's current weekly child support obligation at $217.00 for the parties' two minor children. The trial court determined that Father would not be held responsible for back payment of child support "due to the fact that he took over the primary mortgage payment for the marital residence." *Id*. at 31. The court noted: "The Provisional Order provided for a deviation from [Father's] weekly payment of child support pursuant to a stipulated obligation to pay the second mortgage when, in fact, there was no second mortgage to pay. Consequently [Father] took over the primary mortgage in 2009." *Id.*

[11] Mother and Father filed timely motions to correct error. On March 9, 2018, following a hearing, the trial court issued an order granting the motions in part and amending the final order. The only change relevant to this appeal concerns child support. Mother argued that the trial court erred by not ordering back child support, noting that she always paid the primary mortgage payments during the dissolution proceedings and that there was no second mortgage on the residence. The trial court agreed with Mother and concluded:

> [Mother's] Motion to Correct Error alleges the Court erred by not making child support retroactive. In doing so, the Court gave weight to the Provisional Order…. However, the evidence at trial established there was no "second mortgage of the marital

---

[3] The trial court added Father's weekly income from employment ($560.00) to his average weekly income from flipping houses ($477.00) for a total weekly income of $1037.00.

residence".  It did not exist.  Therefore, the provision was, from its inception, an insufficient basis for a deviation from the Child Support Guidelines.  The Court erred on this issue.  Child support shall be retroactive to the date of filing, October 18, 2007.

*Id*. at 42-43.  Father subsequently filed a second motion to correct error, which was summarily denied by the trial court.  Both parties now appeal the trial court's rulings with respect to child support.

## Discussion & Decision

[12] Mother and Father argue that the trial court erred when it calculated Father's weekly income with respect to his side business of flipping houses.  Neither party disagrees with the trial court's calculation of gross earnings of $186,000 over the three years leading up to the final hearing.  Mother argues that the trial court erred in reducing this amount to $74,000 in net income based on unproven business-related expenses and taxes.  Father, on the other hand, contends that this income was improperly included in the support calculation because it "nearly doubled Father's weekly income" with no indication that Father "would continue to earn such additional amounts." *Appellee/Cross Appellant's Brief* at 6.

[13] A trial court's calculation of child support is presumptively valid and will not be set aside unless clearly erroneous.  *See Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015); *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1251 (Ind. 1994)

(appropriate standard of appellate review of support orders is the clearly erroneous standard rather than the abuse of discretion standard).

[14] Although not disclosed by Father prior to the hearing, the record establishes that for the three years leading up to the hearing he had made a substantial income from his side business of flipping houses. Father also acknowledged at the hearing that he had a fourth house that was currently a work in progress that he hoped to sell later that year. The trial court determined that Father's gross earnings from the sale of the three houses amounted to $186,000. The trial court then determined that a reasonable estimate of Father's net earnings (i.e., income from flipping houses) was $74,000. Father does not challenge these amounts on appeal. He argues only that this irregular income should not have been included in the calculation of ongoing child support because it nearly doubled his weekly income with "no evidence that Father was habitually in the business of selling real estate or that he would ever sell any real estate in the future." *Appellee/Cross Appellant's Brief* at 8.

[15] Weekly gross income is broadly defined when determining income in the child support guideline calculation and encompasses income from nearly any source. *See Ashworth v. Ehrgott*, 982 N.E.2d 366, 373-74 (Ind. Ct. App. 2013) (citing Ind. Child Support Guideline 3(A)). "While a very fact-sensitive determination, irregular income may be included in the total income approach taken by the Guidelines." *Id*. The commentary to Guideline 3(A) suggests that

> an equitable method of treating [irregular] income *may be* to require the obligor to pay a fixed percentage of overtime,

> bonuses, etc., in child support on a periodic but predetermined
> basis…rather than by the process of determining the average of
> the irregular income by past history and including it in the
> obligor's gross income calculation.

Child Supp. G. 3(A), Cmt. 2(b) (emphasis supplied); *see also Ashworth*, 982 N.E.2d at 374. The commentary makes clear that "one method of treating irregular income" is to determine the ratio of the basic child support obligation to the combined weekly adjusted income and then apply the ratio to the irregular income during a fixed period. Child Supp. G 3(A), Cmt. 2(b). But this is not the only method of treating such income. Ultimately, it is within the trial court's discretion to choose a suitable approach to include the irregular income based on the facts of the particular case. *See id*. ("Judges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where reasons justify them.").

[16] Under other circumstances, the trial court might have used the ratio method now suggested by Father on appeal.[4] Father's history of deception, including his failure to disclose three years of substantial irregular income from flipping houses, however, suggests that using the ratio method here could be burdensome. Unlike bonuses and overtime, Father's irregular income is not readily accessible from a third party. Thus, the ratio method would require

---

[4] There is no indication in the record before us that Father asked the trial court to apply a ratio method instead of averaging his past irregular income to determine a weekly income amount.

Mother to continuously investigate Father's income from flipping houses or to rely on his self-reporting, which has not been reliable in the past. The trial court's decision to use an averaging method based on Father's last three years of irregular income to determine his gross weekly income for child support purposes was not clearly erroneous.

[17] Mother challenges the trial court's determination of Father's average income from flipping houses. She contends that the court should not have subtracted any amount for expenses and taxes from Father's gross earnings from the sale of the homes. This argument is clearly unreasonable. The evidence before the trial court was necessarily limited by Father's lack of disclosure, but Father generally testified that he paid taxes on the sale of the properties and had other expenses. He claimed total net income on the sale of the three houses of only about $45,000.00, and Father had purchased a fourth house that was not yet fixed up and ready for resale. The trial court determined that "a reasonable estimate" of Father's net income from flipping the houses was $74,000.00. Mother has failed to establish that this determination was clearly erroneous.

[18] Finally, we address Father's argument regarding the award of retroactive child support. In the order on the parties' motions to correct error, the trial court ordered that "[c]hild support shall be retroactive to the date of filing, October 18, 2007." *Appellant's Amended Appendix Vol. 2* at 43. As observed by Father, the order failed to indicate how this support, which covered a period of ten

years, should be calculated and paid.[5]  On remand, the trial court shall calculate the amount of back support due and set forth a payment plan for the arrearage.

[19]  Judgment affirmed, and case remanded with instructions.

Kirsch, J. and Vaidik, C.J., concur.

---

[5] Father does not challenge the award of child support retroactive to the date of filing.  He simply seeks clarification from the trial court regarding the amount of this award and how he must pay it.