## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 25 2019, 9:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Cassandra R. (Graham) Sonnigsen,

*Appellant-Respondent,*

v.

Bradley Garrison,

*Appellee-Petitioner.*

June 25, 2019

Court of Appeals Case No. 19A-JP-42

Appeal from the Steuben Superior Court

The Honorable William C. Fee, Judge

The Honorable Randy Coffey, Magistrate

Trial Court Cause No. 76D01-1410-JP-320

**Robb, Judge.**

# Case Summary and Issues

[1] O.J.G. ("Child") was born out of wedlock to Cassandra (Graham) Sonnigsen ("Mother") and Bradley Garrison ("Father") in 2012. After Father's paternity was established, Mother had sole legal and physical custody of Child until the parties agreed to joint legal custody and shared physical custody. Mother later filed a letter with the trial court indicating her intent to relocate to Missouri. Father objected, and the trial court issued a temporary restraining order ("TRO") enjoining Mother from relocating. In violation of the court's order, Mother relocated to Missouri but returned to Indiana months later. The trial court found Mother in contempt for relocating against the court's TRO. Father filed a motion to modify custody, parenting time, and child support, and following a hearing, the trial court awarded Father primary physical custody of Child and ordered Mother to pay $28 per week in child support beginning December 28, 2018. Mother appeals and presents two issues for our review, which we restate as: (1) whether the trial court's judgment modifying physical custody was clearly erroneous; and (2) whether the trial court abused its discretion when it ordered a modification of child support commencing December 28, 2018. Concluding the trial court's judgment was not clearly erroneous and the trial court did not abuse its discretion with respect to the child support order, we affirm.

# Facts and Procedural History

[2]     Child was born out of wedlock to Mother and Father on November 18, 2012. Nearly two years later, Father filed a Petition to Establish Paternity of Child. Mother married her husband, Todd, in October 2014. In addition to Child, Mother and Todd share two children and Todd has two children of his own. The trial court issued a Decree of Paternity on September 23, 2015, declaring Garrison as father of Child and granting Mother legal and physical custody of Child. The parties filed a Stipulation RE: Modification of Custody, Parenting Time and Child Support on July 8, 2016, in which the parties agreed to joint legal custody and split physical custody of Child. Appendix to Brief of Appellant, Volume II at 34. Per the stipulation, Father's child support obligation was $0.00. The trial court approved the stipulation the same day.

[3]     On July 6, 2017, Mother filed a letter with the trial court indicating her intent to relocate from Indiana to Kansas City, Missouri, stating, in part:

> The reason for the move is because my husband of 3 years, has a job offer for the local 101 operating engineers out of Kansas City, Missouri for $40/hr with $10/hr pension fund & $10/hr health & welfare fund. This is on top of his regular pay. Plus it offers a very good health insurance and dental insurance package.
>
> We are wanting to move, not just for us, but the children as well to make more money & give our children a better life. . . . [W]e are going to move to Missouri for 6 weeks and if it doesn't work out, we will relocate back to Angola, IN. If it works out, we plan to make the move official on October 6, 2017.
>
> We have informed [Father] of the move, as well as a copy of this letter will be going to [him] – certified mail. I have also tried my

best to allow [Father] to still have joint custody even with us being in Missouri. The options I gave him are as follows:

Every other month for a whole month or [e]very other two weeks.

I am able to offer these possible options of possible parenting time schedules to [Father] because we would like to homeschool [Child]. I have also offered that when [Child] gets into sports, [Father] can keep [Child] for the duration of the sports season, that being football, baseball, basketball, etc. [Father] will get him for one sport and I will get him for the other, with allowing [Father] to choose 2 homeschooling sports per year, and myself 2 homeschooling sports per year. Whenever [Child] is not in sports, we would do alternating weeks or alternating months.

*Id.* at 45-46. Father filed his objection with the trial court stating the driving distance between his current home in Indiana and Mother's proposed relocation is 640 miles, approximately a ten-hour drive. In addition, Father moved for a TRO preventing relocation of Child "until such time as the parties are able to present evidence upon this objection[.]" Appellee's Appendix, Volume 2 at 3. Following a hearing in August 2017, the trial court issued a TRO enjoining Mother from relocating to Missouri with Child because the proposed relocation was Mother's third attempt in less than two years to move,[1] and "the proposed employment is speculative and not guaranteed, [and] . . . is not a legitimate reason for relocating a child's residence." App. to Br. of

---

[1] The trial court found that Mother indicated an intent to relocate twice before, on September 23, 2015, and April 4, 2016.

Appellant, Vol. II at 49. Furthermore, the trial court concluded that the intended move would "essentially destroy the shared custody order" and scheduled a final hearing on the relocation issue. *Id.* Despite the TRO, Mother relocated to Missouri where she, Todd, their children, and Child (when he was in Mother's physical custody) lived in a travel trailer at a camp site in Grain Valley, Missouri. After living at the camp site for some time,[2] Todd signed a lease agreement on September 22, 2018, for a house in Lee's Summit, Missouri, where they lived through the end of December 2018. Then, they moved to Ossian, Indiana in Wells County "because of all of the court stuff going on with [Child] . . . and [Mother] found out that it was [her] mistake. That [she] had moved without being able to move . . . so [they] moved back to make sure that [they] wouldn't have any issues going forward." Exhibit Index, Volume 1 at 14.

[4] Father subsequently filed motions alleging Mother was in contempt of court and the trial court held a hearing on the matter.[3] Following a hearing in February 2018, the trial court found that in January 2018, Mother decided Father was an unfit parent and "without court intervention or support . . . ended [Father's] physical custody of [Child]." Appellee's App., Vol. 2 at 5.

---

[2] In a deposition on September 17, 2018, Mother testified she was unsure as to how long she and her family lived in the camper. She stated it was "close to two months, but [she didn't] know the exact amount of time." Exhibit Index, Volume 1 at 13.

[3] According to the Chronological Case Summary, Father filed a "Verified Information for Contempt and Issuance of Rule to Show Cause" on January 3, 2018, and a second contempt motion on January 19, 2018. *See* App. to Br. of Appellant, Vol. II at 16.

Thus, Mother was found to be in contempt of court for willfully defying the court's authority, sentenced to serve 180 days in the Steuben County Jail, and ordered to pay $1,260 of Father's attorney fees. Mother was permitted to purge herself of contempt and avoid serving the jail sentence by following the custody and parenting time orders and paying the attorney fee award within ninety days.

[5] On March 7, 2018, Father filed a Verified Petition to Modify Custody, Parenting Time and Child Support alleging that a substantial change in one or more of the enumerated statutory factors bearing on child custody had occurred since the July 2016 stipulation. In the ensuing months, various notices and motions were filed with the trial court. Notably, Mother filed a Verified Motion for Authority to Register and Enroll Child in School on August 21, 2018. And on September 11, 2018, Father filed a Notice of Intent to Relocate within Steuben County to a home in Angola he and his fiancée, Tessa, had jointly purchased.[4] Mother filed a motion for an in camera interview and, in response to Father's notice, an "Objection to the Relocation of the Parties' Child, Emergency Request for a Temporary Order Restraining the Relocation of the Child, and Motion to Modify Custody[.]" App. to Br. of Appellant at 42. A hearing on the motions was held on October 31, 2018.

---

[4] Father and his fiancée share one son together.

[6]     On December 6, 2018, the trial court granted Father's motion for modification of custody, awarding Father primary physical custody of Child and granting Mother reasonable parenting time. The trial court found, in relevant part:

> 8.  When the Court approved the July 8, 2016 Stipulation, the parties both lived in Steuben County; [Father] lived in a house in Fremont and [Mother] lived at an apartment in Angola.
>
> 9.  A few months ago, [Father] and his paramour purchased a home in Angola, where they and [their] offspring now reside.
>
> 10.  [Mother] is 28 years old [and] lives with her husband, their child(ren) and, every other week, [Child]. Occasionally [Mother's husband's] children also reside with [them]. [Mother] has moved several times since the entry of the July 8, 2016 Order. Shortly after entry of the July 8, 2016 Order, [Mother and her family] moved to a different apartment in Angola. Shortly thereafter they moved to Bluffton, Indiana to live with [her husband's] mother. From there, they moved to Missouri, where they resided in a camper/trailer at an RV park/campground. Two months after that, [they] moved to a rented home in Missouri. Upon the Court issuing its contempt finding, [they] moved to Ossian, Indiana. Ossian is located in Wells County, which the Court notices is at least 60 miles away from Steuben County.
>
> 11.  Once she settled in Wells County, [Mother] honored the Court's split custody order. At this point in time, the parties exercise custody over [Child] on alternating weeks. During the week when [Child] is with [Mother], he goes to school in Ossian; during the week, when [Child] is with [Father], [he] goes to school in Fremont.

12. [Father] wants exclusive custody of [Child]. [Mother] also wants custody of her son. Each of these parents loves the [C]hild. Both parents have the basic, necessary skills to raise [Child]. Both parents also have deep bonds with their son. [Father's] current paramour also has affection for the [C]hild. [Mother's] husband is also close with [Child]. Further, [Child] has relationships with his step siblings and half-siblings.

13. [Child] is six (6) years old. . . . [and] alternates his time with his Father in Angola and his Mother in Ossian. He is enrolled in two different schools. The [C]hild has a very close bond with both his [parents]. [Mother] is involved in the day-to-day activities of [Child]. [Father] also involves himself in [Child's] activities.

14. Both parties are good persons and strive to raise their [C]hild, as best they can, with this split household situation.

15. [Mother] has experienced problems in her lifestyle, and in caring for the [C]hild. [Mother] has a criminal past involving a felony conviction for forgery. She has given birth to five (5) children. Two of those children were adopted to other parents. [Mother] has moved several times. She and her family spent a part of her recent past living in a campground. She is unemployed. She has only been employed for two (2) weeks during her adult life. Her husband has changed jobs several times. She ignored previous custody orders issued by this Court. Her past and the previous moves show impulsiveness and lack of maturity necessary for raising children to be responsible citizens.

16. [Father] is twenty-seven (27) years old. [Father] has a criminal past involving misdemeanors. He entered the military following his graduation from high school. [Father] is steadily employed and has been throughout his adult life. He owns his home and exercises a controlled and caring household with his

girlfriend . . . . He and the girlfriend have cohabitated for two and one-half years without the benefit of marriage. They have a two (2) year old child together. Although the girlfriend is called [Father's] "fiancée", [Father] expressed no current wedding plans. The girlfriend is employed on a part-time basis at a local nursing home. She takes an active part in caring for [Child] while [Child] is at her home. [Father] is active and involved in caring for [Child]. He and [his girlfriend] own their home jointly. It is an adequate and sufficient home for [Father], his girlfriend, and his children. In the past, [Father] saw that [Child] attended pre-school, and solely paid the cost for the same. [Father] has fed [Child], clothed [Child], helped [Child] with homework, and provided shelter for [Child]. [Father] also makes sure that [Child] has proper medical and dental care; he maintains health insurance on [Child] through his employment.

Appealed Order at 2-4 (footnote omitted). Based on these findings, the trial court concluded a substantial change in circumstance had occurred since the last custody order:

21. . . . A substantial distance separates the homes of the parties. This new condition impairs and negatively complicates the existing split custody order. Moreover, this circumstance is unreasonable when applied to split custody. Also, [Child] now is attending school. The split custody order causes [Child] to be in two school systems and in two distant homes. It creates instability and confusion for the [C]hild and for the parties.

22. [Child's] best interests are not served by the current situation, especially as applied to the schooling situation. [Child's] best interest would be served by granting one party custody of [him] so that he can have a stable home, proper discipline, and regular schooling.

23. Because split custody is no longer reasonable, [Child] should reside with one of the parties full time. The other party should exercise reasonable parenting time.

24. As part of the Court's consideration of the best interests of [Child], the Court considers that [Mother] violated the Court's order preventing her from moving [Child] from Steuben County. Additionally, she has not attempted to comply with the Court's purge order that required that she contribute toward [Father's] attorney fees. The Court concludes that because of these factors and because of [her] felony past, that [Mother] lacks respect for the Court's authority. This lack of respect for the Court causes the Court to conclude that [Mother] lacks stability and maturity. Further, the other circumstances stated in paragraph fifteen (15) above also led the Court to the same conclusion.

25. [Father] has a stable, loving home capable of providing security and stability for [Child's] future and upbringing. [Mother's] lack of stability and maturity presents a less settled circumstance.

26. The best interests of [Child] require that [Father] become the custodial parent.

27. [Father] moved approximately eight (8) miles to Angola, Indiana. He did so in order to purchase a suitable home for his family. He moved for a proper, good-faith, and legitimate purpose. However, [Child] now has to travel fifteen (15) minutes each morning and evening for school. The best interests of [Child] require that this condition terminate.

*Id*. at 4-5. Therefore, the trial court ordered Father to enroll Child in the appropriate school for his home. Mother was ordered to pay $28.00 weekly in child support, beginning on Friday, December 28, 2018. The trial court ordered

Father's new custodial rights to commence at the beginning of Child's 2018 Christmas break from school. Mother now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

On appellate review of judgments with findings of fact and conclusions of law, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). When reviewing such findings, we apply a two-tier standard of review: we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re Paternity of M.G.S.*, 756 N.E.2d 990, 996 (Ind. Ct. App. 2001), *trans. denied*. "Findings are clearly erroneous only when the record leaves us with a firm conviction that a mistake has been made." *D.G. v. S.G.*, 82 N.E.3d 342, 348 (Ind. Ct. App. 2017), *trans. denied*.

We do not reweigh the evidence or assess the credibility of the witnesses. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). And we view the evidence most favorably to the trial court's judgment. *Id.* "In conjunction with the Trial Rule 52 standard, there is a longstanding policy that appellate courts should defer to the determination of trial courts in family law matters." *D.G.*, 82 N.E.3d at 348 (internal citations omitted). As our supreme court has explained,

Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best*, 941 N.E.2d at 502.

## II. Modification of Custody

Mother first challenges the trial court's modification of physical custody in favor of Father. Specifically, she argues that the evidence in the record supports modification of custody *in her favor*, which she contends is in Child's best interests.

A modification of custody in the paternity context is governed by Indiana Code section 31-14-13-6, which allows a trial court to modify a child custody order only if modification is in the child's best interests *and* a substantial change in one or more of the designated statutory factors has occurred. The trial court must consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parents;

    (B) the child's siblings; and

    (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent. . . .

Ind. Code § 31-14-13-2. In addition, "[a]n intentional violation by a custodial parent of an injunction or a temporary restraining order issued under IC 31-14-15 . . . may be considered a relevant factor under section 2 of this chapter that the court must consider in a proceeding for a custody modification under this chapter." Ind. Code § 31-14-13-8.[5] In making a determination regarding modification of custody, the trial court may not hear evidence occurring before the last custody proceeding unless it relates to a change in the factors relating to the child's best interests. Ind. Code § 31-14-13-9.

---

[5] "Custodial parent" is defined as "the parent who has been awarded physical custody of a child by a court." Ind. Code § 31-9-2-30.

[11] Here, the trial court considered the sixty-mile distance between the parties' homes a substantial change since the last custody order rendering the shared custody arrangement no longer reasonable. Due to the distance and split custody order, Child attended two different elementary schools, on alternating weeks, and lived in two distant homes, creating "instability and confusion" among Child and the parties. Appealed Order at 4. Thus, the trial court concluded Child's best interests would be served by granting one party physical custody to allow Child to have a "stable home, proper discipline, and regular schooling." *Id*. Because Father has a "stable, loving home capable of providing security and stability for [Child's] future and upbringing . . . [whereas Mother's] lack of stability and maturity presents a less settled circumstance[,]" the trial court concluded it was in Child's best interests to live with Father. *Id*. at 5. To demonstrate Mother's instability and lack of maturity, the trial court pointed to Mother's violation of the TRO, her failure to comply (or attempt to comply) with the purge order requiring her to pay a portion of Father's attorney fees, and her felony forgery conviction and concluded she lacks respect for the court's authority, which, in turn, led the court to conclude she lacked stability and maturity. Furthermore, with respect to Mother's past, it found "[h]er past and the previous moves show impulsiveness and lack of maturity necessary for raising children to be responsible citizens." *Id*. at 3.

[12] In support of her position, Mother argues Father waited nine months after she filed her notice of intent to relocate to Missouri to seek modification and then he relied on that issue at the final hearing; Father relocated despite her

objection; she is a good mother, involved in Child's life, and she shares a bond with Child; Father is only able to be around Child in the morning one day a week and his fiancée gets Child ready for school; Father does not put Child to bed and agreed he would have more quality time with Child if he had him on the weekends; and the order takes away parenting time from her during the week when she would be available for Child.

[13] With respect to the trial court's finding that Mother's past and her previous moves demonstrate impulsiveness and a lack of maturity, Mother argues the evidence showed "[Father] relocated since the July 8, 2016 Order, held five (6) [sic] different employment positions with varying schedules, and had been in arguments with his fiancé [sic] that led to staying in a different residence overnight." Brief of Appellant at 15-16. To the extent that Mother challenges the trial court's findings that Father is steadily employed and "exercises a controlled and caring household with his girlfriend" as unsupported by the evidence, we disagree. Appealed Order at 3-4.

[14] At the final hearing, a copy of a conversation between the parties via text message in November 2017 was admitted into evidence. In the exchange, Mother asked Father what was going on between him and his fiancée. Father responded that they separated and he was "giving her time to move out until then [he was] staying at [his] mom's[.]" Exhibit Index, Vol. 1 at 92. At the final hearing, Father testified that he and his fiancée got into an argument and he was frustrated, so he left to go to his mother's house. He stated that he and his fiancée "apologized that same night, but because of it being so late, [he]

didn't go home, [he] just stayed at [his] mom's house." Transcript of Hearings, Volume I at 38. Child was not home the evening of that fight. Testimony reveals that Child has been present during other "[l]ittle arguments" between Father and his fiancée but neither left the house. *Id*. at 39. Moreover, the evidence also revealed that, due to Father's work schedule, his fiancée helps Child get ready for school in the morning and takes him to school. Father then picks Child up from school and assists Child with homework and reading. Because Father leaves for work at 3:00 a.m., he goes to bed early and his fiancée typically puts Child to bed. The evidence in the record supports the trial court's finding that, despite occasional disagreements, Father and his fiancée have a stable, caring, and controlled home to raise Child.

[15] Mother also appears to take issue with the trial court's finding that Father is steadily employed. She contends that since July 8, 2016, Father has held five different jobs, a fact supported by the evidence in the record. Father testified that his longest period of unemployment since Child's birth was two weeks. He also testified that his fiancée is employed part-time at a nursing home and typically works two to three days per week – 2:00-8:00 p.m. during the week and 6:00 a.m. to 2:00 p.m. on weekends. Although Father has had multiple jobs since 2016, it appears that he has been consistently employed, has only been unemployed for two weeks in his adult life, has been employed at his current job for a year and four months, and his current employment is unlikely to change. Evidence in the record supports the trial court's finding.

Mother states "a review of the evidence supports that a modification of primary physical custody in [her] favor would serve [Child's] best interests as opposed to favoring [Father] considering I.C. § 31-14-[1]3-2 and the factors as stated." Br. of Appellant at 16. In essence, Mother's arguments constitute an invitation for this court to reweigh the evidence and assess witness credibility in her favor, which we cannot do. *In re Paternity of M.G.S.*, 756 N.E.2d at 996. The trial court listened to the testimony at the final hearing, directly interacted with the parties, and assessed the witness "credibility and character through both factual testimony and intuitive discernment[,]" tasks solely entrusted to the trial court. *Best*, 941 N.E.2d at 502. Because the evidence in the record supports the findings, which support the trial court's modification of custody, we cannot conclude the trial court's judgment was clearly erroneous.[6]

---

[6] Mother briefly argues that "modification from the July 8, 2016 [order] and restriction of [her] parenting time was done without a finding of physical harm to the minor child or significant impairment to the child's development. Indiana cases have consistently held that a trial court is required to enforce a parenting time order, even if the order allows parenting time above the minimum required under the guidelines, in the absence of any finding that parenting time would endanger or significantly impair the child." Br. of Appellant at 16-17 (citation omitted). Here, Mother equates the trial court's grant of physical custody to Father to a restriction on her parenting time with Child. It appears that Mother conflates custody with parenting time. However, although intertwined, custody and parenting time are not synonymous. In addition, Mother argues the trial court improperly considered the parties' criminal history, as well as the fact that she previously put two children up for adoption, in its order modifying custody because the crimes and the adoptions occurred before the last custody order and are unrelated to a change in the factors relating to Child's best interests. Although the convictions and adoptions occurred before the last custody order, given the ample evidence in the record supporting the trial court's findings, as discussed above, any error is harmless. We are unpersuaded these factors were significant enough to ultimately affect the trial court's judgment.

# III.  Child Support

[17]   Mother also challenges the trial court's child support order.  With Father being awarded primary physical custody of Child, the trial court ordered Mother to pay child support in the amount of $28.00 weekly beginning December 28, 2018.

[18]   A trial court's calculation of child support is presumptively valid and will be upheld unless the trial court abused its discretion.  *Ashworth v. Ehrgott*, 982 N.E.2d 366, 372 (Ind. Ct. App. 2013).  A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before it or if it misinterpreted the law.  *Id*.  Here, the trial court adopted Father's proposed child support worksheet, which included his gross income as $958.67 per week.  The comment page explains this calculation:

> Father's [adjusted weekly gross income] computed as follows: gross income for most recent 9 weeks on Petitioner's Exhibit 3 = $8,628.07.  $8,628.07 / 9 weeks = $958.67 per week.

Appealed Order at 10.  Exhibit 3, Father's employment history with his current job, was admitted at trial and supports this calculation.  *See* Exhibit Index, Vol. 1 at 61.  As best we can discern, it appears that Mother challenges the trial court's calculation of Father's gross income.  She argues that the evidence demonstrates that Father earned a gross income from January 1, 2018 through July 27, 2018 of $31,840.76 with several weeks of a gross income exceeding $1,300 and Father's discovery response indicated his gross income was $1,300 per week.  She argues this evidence "provide[s] more weight and period of time

[of Father's] actual income as opposed to a nine week period just prior to the hearing on support[.]" Br. of Appellant at 20. However, Father did testify that he normally works Monday through Friday, but "we've hit a slow slump [at work] because of the . . . recent metal pack, so we're down to four (4) days a week." Tr., Vol. I at 10.

[19] Again, we view Mother's argument as a request to reweigh the evidence and decline to do so. Because there is sufficient evidence supporting the trial court's calculation of Father's gross income, we cannot conclude the trial court abused its discretion in its child support order.[7]

# Conclusion

[20] For the reasons set forth above, we conclude the trial court's judgment awarding Father physical custody of Child was not clearly erroneous and the trial court did not abuse its discretion in its child support order. Therefore, the judgment of the trial court is affirmed.

[21] Affirmed.

---

[7] Mother also briefly argues the trial court failed to include an "allocation for transportation expenses or explanation as to why support was not addressed from the date of the March 7, 2018 Verified Petition forward until the Order[.]" Br. of Appellant at 20. She also asserts that she provided an exhibit at the hearing with a calculated arrearage of $3,565.71 Father would owe her. *See* Exhibit Index, Vol. 1 at 98. It appears that this was Mother's calculation in the event the trial court accepted her proposed worksheet, awarded her physical custody of Child, and then entered a retroactive child support award from March 7, 2018 – the date Father filed his petition to modify custody, and child support, if necessary. *See id.* at 96. Because the trial court awarded Father physical custody of Child and ordered Mother to pay child support beginning after Father's custody commences, we decline to address these issues.

Baker, J., and Najam, J., concur.